# City of Scranton, Appellant, *v.* Public Service Commission et al.

*Street railways—Consent of municipality—Rates—Public Service Commission—Regulation of rates—Constitutional law—Municipalities—State and federal Constitution—Police power—Change of rates fixed by city—Obligation of contract—Consenting ordinance.*

1. Where a municipality, in giving its consent, in accordance with article XVII, section 9, of the Constitution, to a street railway company to use its streets, limits the fare, it is conclusively presumed to know that the sovereign police power of the State, under article XVI, section 3, to modify the terms of the consenting ordinance, will be supreme whenever the well-being of the public so requires.

2. The police power of the State includes the power to regulate charges for service rendered to the public by public service corporations irrespective of ordinances or contracts limiting such charges to particular sums.

3. An order of the Public Service Commission authorizing a street railway to change a rate fixed by the city ordinance granting consent to the use of city streets, does not violate any constitutional rights of the city to insist upon the continuance of the lower fare, for no such right exists.

Argued April 27, 1920.   Appeal, No. 229, Jan. T., 1920, by plaintiff, from judgment of Superior Court, Oct. T., 1919, No. 179, affirming order of Public Service Commission, Complaint Docket No. 1637 (1917) and No. 2351 (1918) in case of City of Scranton v. Scranton Railway Co. and Public Service Commission.   Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ.   Affirmed.

Appeal from Superior Court.   See 73 Pa. Superior Ct. 192.

The opinion of the Supreme Court states the case.

The Superior Court sustained the decision of the Public Service Commission.   The City of Scranton appealed.

1920.]    Assignment of Error—Opinion of the Court.

*Error assigned* was, among others, order of commission increasing rates, quoting it.

*R. S. Houck,* City Solicitor, with him *Jerome K. Barrett,* Assistant City Solicitor, for appellant.—The legislature has no power to abrogate conditions in consent ordinances between municipalities and street railway companies: Allegheny v. Millville, etc., St. Ry., 159 Pa. 411; West Chester Borough v. Postal T. Cable Co., 227 Pa. 384; McKeesport v. McKeesport & R. Pass. Ry., 252 Pa. 142; Ashworth v. Pittsburgh Rys., 231 Pa. 539; City of Reading v. United Traction Co., 236 Pa. 197; Plymouth Twp. v. Chestnut Hill & Norristown Ry., 168 Pa. 181.

*H. B. Gill,* for Scranton Ry. Co.—The Public Service Commission has power to authorize a rate of fare for a street railway company in excess of that fixed by municipal ordinance granting consent to the occupation of the streets: York Water Co. v. York, 250 Pa. 115; Leiper v. B. & P. R. R., 262 Pa. 328; Carlisle & Mechanicsburg St. Ry.'s App., 245 Pa. 561.

The constitutional provision makes no grant of any power to the municipality: Allegheny v. Millvale, etc., Ry., 159 Pa. 411; Milwaukee Elec. Ry. v. Wisconsin R. R. Com., 238 U. S. 174; Home Tel. Co. v. Los Angeles, 211 U. S. 265.

Even if there be a grant of power it is limited by the other provisions of the Constitution: Etter v. McAfee, 237 Pa. 557; Guldin v. Schuylkill County, 149 Pa. 210.

*Berne H. Evans,* with him *John Fox Weiss,* for Public Service Commission.

OPINION BY MR. CHIEF JUSTICE BROWN, June 26, 1920:

The ninth section of the ordinance of the City of Scranton, giving its consent to the construction within its limits of the street passenger railway now owned and operated by the Scranton Railway Company, pro-

vides that a passenger "may ride from one part of the city to any other part of the city for a fare, which shall not exceed five cents." In pursuance of an order of the Public Service Commission, made April 22, 1919, the Scranton Railway Company filed a new schedule of rates, increasing its unit fare to seven cents. An appeal from this order to the Superior Court was dismissed: City of Scranton v. Public Service Commission, 73 Pa. Superior Ct. 192. On petition of the City of Scranton this appeal was allowed from the order or decree of the Superior Court, limited, however, to a consideration of the constitutional question of the power of the legislature to authorize the Scranton Railway Company to charge a fare in excess of that fixed in the consenting ordinance. Though the order allowing the appeal is explicit in limiting it to but one question, counsel for appellant discuss others, but we shall confine ourselves to the one mentioned. None of the others call for discussion.

The legislature could not have authorized the construction of a street railway within the limits of the City of Scranton without its consent, for the mandatory words of section 9, article XVII, of the Constitution are: "No street passenger railway shall be constructed within the limits of any city, borough or township without the consent of its local authorities." What this provision means, and what effect is to be given to it in a controversy strictly between a municipality and a street railway company, are clearly pointed out in Allegheny v. Millville, Etna & Sharpsburg Street Ry., 159 Pa. 411. What was there decided was that a railway company cannot avail itself of consent given to it by a municipality to construct its railway within the municipal limits if it fails to perform a condition upon which the consent was given; and this was so decided because "no amount of hardship, or impossibility, or illegality, will avoid the bar of a condition precedent unperformed: Co. Litt. 206; 2 Blackst. 157." The question in the case was

solely between the City of Allegheny and the railway company; the Commonwealth was not a party to it; the question now under consideration was not involved, and Mr. Justice MITCHELL, speaking for the court, expressly so declared.

While the constitutional provision requiring the consent of a municipality to the construction of a street railway within its limits is clear and can have but one meaning, it must be read in connection with the equally clear third section of article XVI of the Constitution, which declares that "the exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State." This is but declaratory of an implied power of the State, inherent in all forms of government: Com. v. Vrooman, 164 Pa. 306; and it needs no constitutional reservation or declaration to support it.

Street passenger railways have become necessities. They exist everywhere and contribute in a very large measure to "the general well-being of the State," as means of transportation and communication not only between closely connected communities, but also between those widely separated. Though this is so, they cannot be operated in any municipality without its consent. With such consent, they may be; and, as between the local authorities and the railway companies, there can be attached to it terms and conditions which must be performed by the companies; but a municipality may not annex such terms to its consent as will deprive the Commonwealth of its inherent police power to see that a street passenger railway company is not prevented from serving the public by the municipality's enforcement of conditions in a consenting ordinance that have become impossible of performance. What may have been a reasonable rate of fare at the time of the passage of a consenting ordinance may, under changed economical con-

ditions, become confiscatory, and a street passenger railway company may not be able to serve the public on account of insufficient revenues, based upon the fare fixed in the ordinance. When such situation arises, as it has arisen and will arise again, there must be relief somewhere to the public, and it lies in the police power of the State, which is never to be abridged nor bartered away.

When the City of Scranton gave its consent to the construction of what is now the Scranton railway, it exercised a constitutional power conferred upon it, but it is conclusively presumed to have known at the time the consenting ordinance was passed that the sovereign police power of the State to modify its terms would be supreme whenever the general well-being of the public so required. In exercising the power given it by section 9 of article XVII of the Constitution, the city did so with section 3 of article XVI before it, giving it distinct notice that the police power of the Commonwealth was, and would be, controlling. With this knowledge on the part of the municipality at the time it passed the ordinance, it is not now to be heard to complain that the State has struck down its contract or agreement with the street passenger railway company. The State has done nothing of the sort, but has merely enforced a condition written by the law into the ordinance at the time of its passage, that it would at all times be subject to the police power of the Commonwealth. That power includes the regulation of charges for services rendered to the public by public service corporations, and the State has exercised it in the passage of the Public Service Company Act, under which the Public Service Commission passes, in the first instance, upon all changes of rates made by public service corporations subject to review by the courts: St. Clair Borough v. Tamaqua & Pottsville Electric Railway Company et al., 259 Pa. 462.

While the foregoing conclusion is so clear upon reason and certain fixed principles of government as not to require the citation of authorities to support it, they are to

be found everywhere.  Reference to but a few of them will suffice.   In Leiper v. Baltimore & Philadelphia Railroad Company et al., 262 Pa. 328, it was held that one who enters into a contract with a public service corporation fixing rates is presumed to have done so with knowledge of the right of the State, in the exercise of police power, to prescribe different rates, and that a contract with a public service corporation fixing rates for service, whether for a definite or indefinite period, has no binding force when its terms conflict with the rates fixed in the method prescribed by the public service company law of July 26, 1913, P. L. 1374.   In so holding we said, through Mr. Justice Fox: "To permit the contract made between the appellee and appellants to stand as against rates established in a legal and orderly method and in conformity with the provisions of the law, would be to nullify the purposes of the act.  It would be impossible for the commission to enforce an equality of reasonable rates, except upon the basis that it is not bound by contracts previously entered into between a public service company and either a municipality, another corporation, or a private individual.  The basis upon which this conclusion must rest is that under the Constitution of Pennsylvania, article XVI, section 3, it is provided: 'The exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well-being of the State.'  Where the rights of individuals under a contract which would otherwise be perfectly valid are in conflict with the 'general well-being of the State,' the rights of the individuals must give way to the general welfare.  It therefore follows that when, as in this case, the parties enter into a contract with a public service corporation relating to rates, they are presumed to do so with the knowledge that the right of the State to exercise this police power in the future is expressly reserved, and that where the common weal and the interests of the public

demand that the provisions of the contract thus entered into shall be modified, it can be done without any violation of the provision of the Constitution of the United States with reference to the impairment of the obligation of contracts. A public service company is granted its franchise by the State so that it may properly and efficiently serve its people. This grant is made subject to the reserved power of the Commonwealth to supervise and regulate the exercise of the franchise, and, in the case of rates, to increase or decrease them as the public interest, as distinguished from mere private interest, may demand." This was followed by the very recent case of Schaper v. Cleveland & Erie Railway Company, 265 Pa. 109, in which the same rule was announced, and a contract or agreement for the sale of round-trip tickets and books of tickets at certain rates, though valid when made by the parties to it, was held to be subject to the power of the State to change the rates in the future, in the exercise of its governmental authority. In other jurisdictions, notably Missouri, Illinois, Colorado and Utah, the effect of constitutional provisions similar to section 9, article XVII, of our Constitution has been before the courts of last resort, and it has been uniformly held that there was no delegation of the police power to municipalities to fix rates, nor was there a limitation on the exercise of that power by the legislature. This ·· disputable principle has been announced time and again by the Supreme Court of the United States. "Usually, where a contract, not contrary to public policy, has been entered into between parties competent to contract, it is not within the power of either party to withdraw from its terms without the consent of the other; and the obligation of such contract is constitutionally protected from hostile legislation. Where, however, the respective parties are not private persons, dealing with matters and things in which the public has no concern, but are persons or corporations whose rights and powers were created for public purposes, by legislative acts, and where

the subject-matter of the contract is one which affects the safety and welfare of the public, other principles apply.  Contracts of the latter description are held to be within the supervising power and control of the legislature, when exercised to protect the public safety, health and morals, and that clause of the Federal Constitution which protects contracts from legislative action cannot in every case be successfully invoked. The presumption is that when such contracts are entered into it is with knowledge that parties cannot, by making agreements on subjects involving the rights of the public, withdraw such subjects from the police power of the legislature": Chicago, B. & Q. R. R. Co. v. Nebraska, 170 U. S. 57. "Assuming (what is not clear) that the provision in the franchise ordinances respecting the rates of fare and the transfer privilege are contractual in form, still it is well settled that a municipality cannot, by a contract of this nature, foreclose the exercise of the police power of the state unless clearly authorized to do so by the supreme legislative power": Puget Sound Traction, Light and Power Co. v. Reynolds et al., 244 U. S. 574.

The distinction between the right claimed by the City of Scranton and that exercised by the State is thus well stated by the Supreme Court of Oregon in City of Woodburn v. Public Service Commission of Oregon et al., 82 Ore. 114: "The right of the state to regulate rates by compulsion is a police power, and must not be confused with the right of a city to exercise its contractual power to agree with a public service company upon the terms of a franchise.  The exercise of a power to fix rates by agreement does not include or embrace any portion of the power to fix rates by compulsion. When Woodburn granted the franchise to the telephone company, the city exercised its municipal right to contract, and it may be assumed that the franchise was valid and binding upon both parties until such time as the state chose to speak; but the city entered into the

contract subject to the reserved right of the state to employ its police power and compel a change of rates, and, when the state did speak, the municipal power gave way to the sovereign power of the state."

The Public Service Commission having, in the case under consideration, exercised a power lawfully conferred upon it by the State, its action is not to be disturbed as being a violation of the constitutional right asserted by the City of Scranton to insist upon the continuance of a five-cent rate of fare, for no such right exists.

The order of the Superior Court is affirmed, at the costs of the appellant.