# Vernon Township et al., Appellants, *v.* The Public Service Commission.

*Public Service Commission—Public Service Company Law—Gas companies—Contracts with municipalities—Free service.*

Under the provisions of section 8, of article III, of the Public Service Company Law it is unlawful for any public service company to "make or give undue or unreasonable preference or advantage in favor of or to any person or corporation or any locality or any particular kind or description of traffic or service in any respect whatsoever." The supply of free gas by a gas company to a municipality is a violation of this section of the Public Service Company Law.

All contracts for service to be rendered by a public service company for a specified consideration must be held to be made subject to the reserved regulating power of the State. The effect of the application of this rule is that a municipality to which a public service company has contracted to furnish service for a specified consideration or rate, cannot require performance for that consideration or rate if the public interest when determined as the statute prescribes, requires that the service shall be rendered at a different rate. With regard to such matters the statute has imposed upon the Public Service Commission the responsibility for determining what the public interest requires and how it shall be satisfied and it is immaterial that a municipality is a party.

Argued April 14, 1920. Appeal, No. 103, April T., 1920, by complainants, from report and order of the Public Service Commission, Complaint No. C 1495-1917, in the case of the Township of Vernon and the School District of Vernon Township v. The Public Service Commission of the Commonwealth of Pennsylvania, on appeal, and The United Natural Gas Company intervening appellee. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Complaint against the United Natural Gas Company before the Public Service Commission on account of schedule of increased rates effective May 15, 1917.

The charges in said schedule were alleged to be unjust and unreasonable and the suspension of free service was claimed to be in violation of existing contract.

After hearing, Rilling, Commissioner, filed the report of the commission holding that free service was prohibited by the provisions of section 8, article III, of the Public Service Company Law, and dismissed the complaint.

*Error assigned* was the order of the commission dismissing the complaint.

*Albert L. Thomas,* and with him *Wesley B. Best* and *Otto A. Stolz,* for appellants.—The matters at issue have already been decided by the Supreme Court and the question is res adjudicata: Vernon Township et al. v. United Natural Gas Company, 256 Pa. 435; Nernst Lamp Co. v. Hill, 243 Pa. 448; Metzger's Est., 242 Pa. 69; Lancaster v. Frescoln, 192 Pa. 452; Schwan et al. v. Kelly et al., 173 Pa. 65; Long v. Lebanon Natl. Bank, 211 Pa. 165; Raisig v. Graf, 17 Pa. Superior Ct. 509.

The franchise was given to the public service company by the municipality and the contract cannot be abrogated: Belfast v. Belfast Water Co., 98 Atl. 738; Vernon Township v. United Natural Gas Co., 256 Pa. 435; Old Colony Trust Co. v. City of Omaha, 230 U. S. 100; Walla Walla v. Walla Walla Water Co., 172 U. S. 1; Cleveland v. Cleveland City Ry. Co., 194 U. S. 517; New Jersey v. Yard, 95 U. S. 104; Mercantile Trust & Deposit Co. v. Collins Park and B. R. Co., 99 Fed. 812.

*J. V. Frampton,* of *Speer, Frampton & Courtney,* and with him *George F. Davenport, J. E. Mullin, T. C. Cochran* and *Trax & Parker,* for intervening appellee.—The contract requiring the utility to render free service is unjustly discriminatory and violative of the provisions of the Public Service Company Law: Sandpoint Water & Light Company v. Sandpoint, P. U. R. 1918 F, 737; Re

Hanover Water Co., P. U. R., 1918 D, 824; Louisiana v. Louisiana Water Co., P. U. R., 1918 B, 774; Re Portland Water District, P. U. R., 907; Board of Education v. Oram, P. U. R., 1916 E, 100; Melvern Tel. Co. v. Carbondale Tel. Co., P. U. R., 1915 B, 216; Re Dakota Central Tel. Co., P. U. R., 1915 D, 1054; Re Galveston Water Works Co., P. U. R., 1915 E, 27; Landon v. Lawrence, P. U. R., 1915 E, 763; In re Board of Trustees of Warren, P. U. R., 1919 F, 38.

The ordinances, in so far as they legislate on rates for service, are no longer binding: Wilkinsburg Boro. v. Public Ser. Com., 72 Pa. Superior Ct. 423; Foltz v. Public Ser. Com., 73 Pa. Superior Ct. 24; Scranton v. Public Ser. Com., 73 Pa. Superior Ct. 192; McKeesport v. Pittsburgh Rys. Co., 72 Pa. Superior Ct. 435; Leiper v. Balto. & Phil. R. R. Co., 262 Pa. 328; V. & S. Bottle Co. v. Mountain Gas Co., 261 Pa. 523.

*Berne H. Evans,* and with him *John Fox Weiss,* for the Public Service Commission.

Opinion by Linn, J., July 14, 1920:

Appellant municipal corporation, Vernon Township, on May 12, 1917, filed a petition with the Public Service Commission complaining that the gas company had filed a schedule of rates and had given notice that after May 15, 1917, it "would discontinue free gas and special rates, among others, to......Vernon Township"; that the proposed action was illegal and in violation of a franchise contract under which the gas company's pipes were permitted to be laid and maintained in the streets in return for "free gas for two school houses and ten street lights." The petition prayed that respondent be required to answer, and that upon final hearing, the commission "make such order in the premises as may seem meet."

The answer averred that the Public Service Company Law prohibited furnishing "free gas" as desired. The

record of the proceeding before the commission certified for the purposes of this appeal, shows that the complaint was heard with eleven other complaints of the same general character against the same gas company. Some municipalities complained that the proposed rates were excessive and unreasonable, as well as being in violation of franchise contracts generally similar to appellant's. All the claims to free gas are based on ordinances granting the right to lay pipes in and otherwise occupy the streets of the respective municipalities and with an unimportant exception, all the contracts were made prior to the enactment of the Public Service Company Law.

The gas company furnished service to and in a number of municipalities.

As indicating possible unjust locality discrimination under section 8, article III, P. L. 1393, the attention of the commission was called "to the fact that of the five complaining cities in this case but two, being the Cities of Franklin and of Meadville, make any claim for free gas and the amount claimed in each case is different, while the Cities of Bradford, Dubois, Oil City and Titusville make no claim for free gas under their franchise ordinances and are not proceeding thereunder." It was also stated to the commission that of "five complaining boroughs, three......only make a claim for free gas and in each case the amount is different from that claimed by the other boroughs; while two......make no claims for free gas." The school district of Meadville claimed "free gas for only one ward, the Fifth Ward, up to a consumption of 450,000 feet, and claims a special rate for gas for the remaining buildings in the school district, of 24 cents per thousand cubic feet, and a like claim for the excess in the Fifth Ward over 450,000 feet, being less than the rate formerly charged."

The commission dismissed all the complaints after hearing on the merits. Appellant and four other complainants have appealed. Apparently by agreement only one question seems to have been considered, and is

now brought here, and that, in the case of this appellant, is whether it is now entitled "to receive free gas for two school houses and ten street lights" as provided in its contract, or whether it must pay the rates on file.

This appeal contains an element not in the other cases. It seems that about January 1, 1915, the gas company notified the township that thereafter free gas would not be furnished and that if bills rendered for gas furnished were not paid, the service would be discontinued. The township then filed a bill to restrain the action threatened; the bill was dismissed below for failure of proof that a contract had been made providing for free gas as contended by complainant; on appeal the decree was reversed: 256 Pa. 435. Presumably the notice of discontinuance of free gas and the claim of right to charge therefor were not based upon schedules of rates filed with the Public Service Commission. After the decision, a schedule of rates was duly filed as required by the Public Service Company Law, whereupon Vernon Township immediately filed the petition which resulted in the order now under review. Appellant contended below and here that the right to "free gas for two school houses and ten street lights" has been adjudicated by the Supreme Court and that, as a consequence of that decision, the township is entitled under any and all circumstances to the free gas specified, and that so much of the gas company's service is exempt from regulation. This is not a fair inference from the decision and is a larger claim than could have been made under the pleadings. The court decided that a contract existed as the township claimed and ordered an injunction against the threatened action. But it is not a proper interpretation to say that the decision determines that the regulation of the gas company's service to Vernon Township shall be determined by that contract; the court has not held that the contract so restricts the commission's general power of regulation. Doubt about the matter is removed by the opinion of Mr. Justice FRAZER which

states: "In a supplemental paper-book appellee argues
that the contract in question is unenforceable because it
violates the Act of July 26, 1913, P. L. 1374, relating to
public service corporations, and prohibiting discrimi-
nation in favor of any persons, corporation or locality,
with respect to services or charges therefor. With re-
spect to this contention it is sufficient to say that no
question of discrimination or violation of the Public
Service Company Law in other respects was raised by
the pleadings or the evidence taken in the court below,
and, consequently, that question is not now before us.
The sole matter for determination is the validity of the
contract between Vernon Township and the Meadville
Fuel Gas Company." Treating that case then as having
settled that a contract existed, this appeal raises exactly
the same questions raised by the other four.

Objections to the order of the commission are various-
ly stated by various appellants, and may be summarized
as follows: (1) service rendered to a municipal corpo-
ration by a public service company is not subject to regu-
lation by the commission; (2) the order is illegal as
"an abrogation of such contract in violation of the Fed-
eral Constitution"; (3) whether unjust discrimination
existed and who had the burden of proof.

1. After invoking the jurisdiction of the commission
to obtain regulation of the gas company's service and
rate chargeable therefor, participating in hearings on
the merits, and obtaining a decision adverse to its expec-
tation, appellant now contends that the commission has
no jurisdiction to regulate the service and rates ques-
tioned. We pass the effect of such action on the decision
of this appeal, since in any event the order must be af-
firmed.

The rule that all contracts for service to be rendered
by public service companies for a specified consider-
ation were made subject to the reserved regulative power
of the state has been described and justified so frequent-
ly in recent and familiar decisions that we need only

cite a few without repeating what was there stated: Leiper v. Baltimore and Philadelphia Railroad Co., 262 Pa. 328; Wilkinsburg v. Pub. Ser. Com., 72 Pa. Superior Ct. 423; Scranton v. Pub. Ser. Com., 73 Pa. Superior Ct. 192, and 268 Pa. 192; Suburban Water Co. v. Borough of Oakmont, 268 Pa. 243.

The effect of the application of the rule is that no promisee to whom a public service company had promised service for a specified consideration or rate may require performance for that consideration or rate if the public interest when determined as the statute prescribes, requires that the service be rendered for a different rate. With regard to such matter the statute has imposed upon the Public Service Commission the responsibility of determining what the public interest requires and how it shall be satisfied.

The dispute in this case is within narrow limits. It is conceded that the gas company intervening as appellee is a public service corporation whose rates for services rendered to any private consumer are subject to regulation, even though there be a contract requiring such service to be rendered at a specified rate (Leiper v. R. R. Co., supra), but it is contended that since the service under discussion is to be rendered, not to a private consumer, but to a municipal corporation, a different rule applies, and that is, that the charge for the service rendered by a public service company to a municipal corporation is not subject to regulation under the statute. It is also conceded that the statute does not specifically exempt such service from regulation, but the exemption is said to be a fair inference to be made from certain provisions in the act. If municipalities that must buy from some or all of the public service companies enumerated in section 1 article I, must pay whatever such companies choose to charge (subject to constitutional limitations applying to some only), or go without the service (contracts for such service not being within section 11, article III, P. L. 1395; Suburban

Water Co. v. Oakmont, infra), and if the state intended that the public as represented in the state's subordinate governmental agencies should be substantially without relief against inadequate service, unreasonable rates and practices of various kinds illegal as between such companies and individuals and private corporations, we must expect to find the exception written in plain language.

Appellants observe that the definition of the word "corporation" used in the. act provides 'that the term "shall not include municipal corporations except as otherwise provided in this act" (P. L. 1375) and contend that the elimination of a municipality from the term "corporation" considered in connection with section 8, article III (P. L. 1393) prohibiting deviation from a tariff or giving undue preference or advantage "to any person or corporation or any locality......" (the word "person" being defined to include "all individuals, partnerships or associations other than corporations") shows a legislative intent to exclude from the operation of the statute the service rendered by a public service company to a municipality.

The inference proposed disregards the comprehensive character of the provisions of the statute. "The term 'service' is used in this act in its broadest and most inclusive sense, and includes any and all acts done, rendered or performed, and any and all things furnished or supplied, and all and every the facilities used or furnished or supplied, by public service companies in the performance of their duties to their patrons, employees, and the public, as well as the interchange of facilities between two or more public service companies": section 1, article I, P. L. 1376. Section 1(a), article II, makes it the duty of every public service company to maintain service and facilities "practically sufficient for the accommodation and safety of its patrons, employees, and the public and in conformity with such reasonable regulations or orders as may be made by the commission"

(P. L. 1377) ; and section 1 (b) of the same article requires such company "To render and furnish all such service at prices, charges, rates, tolls, fares or compensation that shall be just and reasonable, and in conformity with such reasonable regulations or orders as may be made by the commission." That general language includes municipalities as consumers; it excludes no purchaser of the service. Section 7, article III (P. L. 1393) makes it unlawful for any such company to render or furnish in this state "any service of the kind or character rendered or furnished by it, until it shall have filed and posted its tariffs and schedules in accordance with the provisions of......" this statute. Section 8, article III (P. L. 1393) makes it unlawful for any public service company to "make or give undue or unreasonable preference or advantage in favor of or to any person or corporation or any locality or any particular kind or description of traffic or service in any respect whatsoever; or to subject any particular person or corporation or locality, or any particular kind or description of traffic or service, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Section 1, article V (P. L. 1402) provides "The commission shall have general administrative power and authority, as provided in this act, to supervise and regulate all public service companies doing business within this Commonwealth. Said power and authority shall include the power to inquire into and regulate the service........the safety, adequacy and sufficiency of the facilities, plant and equipment for the carrying on of their business by said public service companies......" Section 2, article V (P. L. 1403) authorizes the commission to prescribe adequate service when it shall appear that the service rendered "in the performance of its public duties within this Commonwealth" is inadequate. In view of such provisions and others of similar import that might be quoted, we cannot agree that the exception exists.

Undoubtedly as Mr. Justice MOSCHZISKER stated in Barnes Laundry Co. v. Pittsburgh, 266 Pa. 24, 33, municipal corporations "are neither within the term 'public service companies' as used in the statute, nor are they embraced in its rate-making provisions; further ......they are not subject at all to the jurisdiction of the public service commission beyond the 'limited extent' provided in the parts of the act......" (quoted by him) ; see also pages 36 and 37 of his opinion. But appellant is not proposing to make rates for something it sells; it is not rendering the service in question; it is purchasing service from a public service company and claims the right to say what it shall pay regardless of the effect of its action upon the public interest which is to be determined and satisfied by the commission.

The decisions are against plaintiff's contention: in Mt. Union Borough v. Water Co., 63 Pa. Superior Ct. 337, and 256 Pa. 516, it was held that a contract to supply water to the borough for "ten years or until such time as said works may be purchased by said borough" in consideration of the grant to the water company of the right to lay and maintain water-pipe lines in the street, did not exempt from regulation the service of the company and the rates at which it should furnish water to the borough. In McKeesport v. Equitable Gas Co., and Pittsburgh v. Phila. Company, 268 Pa. 233 and 234, it was held that equity had no jurisdiction on the bill of a municipality to restrain the gas company from refusing to continue to furnish free gas to the municipality for fuel and for illumination for municipal buildings under contracts quite like those now before us. In assumpsit by Suburban Water Co. v. Borough of Oakmont, (supra), to recover at rates filed in 1918 for water furnished to the borough for municipal purposes, one of the grounds of defense was that no contract with the municipality for the service had been approved by the Public Service Commission; it was assumed that the water had been furnished under a contract made

years before and it was held that when the company increased its rates by filing the tariff in accordance with the statute in 1918, the rate so fixed and not the contract rate became the lawful rate which the borough must pay.

2. In view of the number of recent decisions against appellant's contention that the obligation of its contract with the gas company is impaired by the action of the state, we shall merely cite them: Producers' Transportation Co. v. Railroad Commission, 251 U. S. 228, 232; Leiper v. Railroad Co. (supra); Slate Belt, etc., Co. v. Pub. Ser. Com., 73 Pa. Superior Ct. 493; Suburban Water Co. v. Borough of Oakmont, (supra); City of Scranton v. Pub. Ser. Com., 73 Pa. Superior Ct. 192, affirmed 268 Pa. 192.

It is perhaps due to the able argument presented by the learned counsel for one of appellants in support of the proposition that the Act of May 29, 1885, P. L. 29 (sections 11 and 13) authorizes these contracts and that they stand on higher ground than rate-contracts between public service companies and individuals, or between public service companies and municipalities not so expressly authorized to contract, that we should refer to the contention. It is true that the Act of 1885 provides that gas companies incorporated thereunder "shall not enter or lay down their pipes or conduits on any street or highway of any borough or city of this Commonwealth without the assent of the councils ......" But while the municipality may undoubtedly impose conditions of consent, appellant's deduction is too large; the language of the Chief Justice in *City of Scranton v. Public Service Commission, supra*, applies; dealing with the consent which a street railway company must obtain to occupy the streets of a municipality under section 9, article XVII, of the Constitution, he said: "......as between the local authorities and the railroad companies, there may be attached to it terms and conditions which must be performed by the com-

panies, but a municipality may not annex such terms to its consent as will deprive the Commonwealth of its inherent police power to see that a street passenger railway company is not prevented from serving the public by the municipality's enforcement of conditions in a consenting ordinance that have become impossible of performance......When such situation arises, as it has arisen and will arise again, there must be relief somewhere to the public, and it lies in the police power of the State, which is never to be abridged nor bartered away." It is also clear that a statute authorizing a municipality to impose conditions under which streets may be used and occupied by a public service company, does not authorize the municipality to regulate the rates of the company: Winchester v. Winchester Water Works Co., 251 U. S. 192.

3. The third contention relates to the unjust discrimination found below and the burden of proof. For the purposes of this appeal, it is immaterial whether the evidence in the record was produced by petitioner or by respondent. The commission found and we agree "that the free service provided for in the contracts......or service at less than the filed rate, if rendered, would work an unjust discrimination against other patrons. ......" The record shows that for a year from a given date in 1917 the value at published rates of the free service rendered by the gas company to Franklin was $900.41; to Cooperstown, $200.32; to Jackson Centre, $24; to Utica, $157.07; to Cochranton, $412.16; to Meadville, $950.53; to Vernon Township, $267.48; to Sharon, $1,037.38. As the commission said, "by free service is meant service, the cost of which is paid by another. The service which is rendered to a municipality without any consideration being paid therefor costs the utility the same amount and to the same extent as any other service of like kind and amount rendered by it. If any service is rendered by the utility free or at a reduced rate, it necessarily must be paid for by someone,

and the burden of its cost is imposed upon other shoulders. The service of the utility like its property cannot be misapplied." Furnishing free gas as demanded by appellant would violate section 8, article III (P. L. 1393), of the act.

The order is affirmed, costs to be paid by appellant.

HENDERSON, J., dissents.