## Staples, Appellant, *v.* Public Service Commission.

*Public Service Company Law — Public Service Commission — Water companies—Rates—Rate restrictions incorporated in charter —Regulation—Jurisdiction of Public Service Commission.*

The regulation of rates, to be charged for service by a water company, is under the control of the Public Service Commission exercising the delegated police powers of the Commonwealth.

It is immaterial that the act of assembly creating the company contained a provision limiting the amount to be charged for such service.

The same authority which authorized the rate in the charter of the water company has, by subsequent legislation, established a general method for determining the reasonable rates which such corporation might collect. If the proviso in the charter of the water company was regulatory, it was an exercise of authority by the legislature which has since been transferred to the Public Service Commission, and is not different in its nature and effect from the order of the commission fixing a rate. The enactment of the Public Service Company Law repeals such regulatory legislation, because

it is inconsistent with the whole scheme and process of public service legislation.

Argued March 16, 1922.   Appeal, No. 26, March T., 1922, by complainant, from the order of the Public Service Commission of the Commonwealth of Pennsylvania, Complaint Docket No. 4493, in the case of S. S. Staples v. The Public Service Commission of the Commonwealth of Pennsylvania, and the White Haven Water Company, intervening appellee.   Before ORLADY, P. J., PORTER, HENDERSON, KELLER and LINN, JJ.   Affirmed.

Complaint against White Haven Water Company on account of increased rates effective August 31, 1921.

The complaint alleged that the increased rate was illegal and unlawful because it was in excess of ten dollars per annum, which was the amount stipulated in the company's charter to be charged for domestic service. To this complaint respondent filed a petition to dismiss in the form of a demurrer and, after argument the Commission sustained the petition and dismissed the complaint.   The complainant appealed.

*Error assigned* was the order of the commission.

*W. A. Valentine,* and with him *R. J. O'Donnell,* for appellant.

*William B. Landis,* and with him *Walter W. Kohler,* for White Haven Water Company, intervening appellee.

*Frank M. Hunter,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY HENDERSON, J., April 17, 1922:
The appellant filed a complaint with the Public Service Commission against the White Haven Water Com-

pany, alleging that the company had increased the rate for domestic service to residents of the Borough of White Haven, of which he was one in violation of the provisions of the charter of the company.   To this a demurrer was filed which, after hearing, was sustained by the commission, and from that order we have this appeal.   The company was incorporated by the Act of February 27, 1865, P. L. 203.   The first section provided for the organization of the corporation and included a proviso in these words: "Provided that the said company shall not charge any private family more than $10 per annum for water, or the use thereof."   The 4th section required the company to buy the water works then owned by the borough at a price to be fixed by a board of appraisers to be selected as in the act provided.   Pursuant to the authority granted to the corporation and the action of the borough, the property connected with the supply of water to the residents of the municipality was transferred to the newly created water company which thereafter supplied the community.   The right of the corporation to increase the rate for domestic consumption is resisted on the ground that the proviso to the first section of the act of incorporation permanently fixed the rate at which the business of the company relating to domestic service should be maintained; that this provision became a part of the contract between the borough and the water company when the latter took over the borough water works; and that this contract having been created by legislative direction is inviolable and permanently binding.   We have then the question whether the legislative restriction as to the maximum water rate for the particular service is so fixed by the transaction between the borough and the water company under the Act of 1865 as to take the facts out of the operation of the Public Service Act and to exempt the domestic consumers of the borough from liability to pay a rate in excess of that stated in the act creating the company.   It is conceded by the learned counsel for the

appellant that the water company is subject to the lawful and reasonable regulation of the rates to be in force in the borough except as controlled by the proviso above quoted, and this much at least must be conceded under the broad authority given to the commission in section 1, article IV, of the Public Service Law, wherein it is declared that "the commission shall have general administrative power and authority, as provided in this act, to supervise and regulate all public service companies doing business within this Commonwealth:

"Said power and authority shall include the power to inquire into and regulate the service rate, fares, tolls, or charges of any and all public service companies." The object of the statute was to provide a complete system for the supervision and regulation of public service corporations, and the evident intention of the legislature was to make that act the supreme law as is well stated in York Water Co. v. York, 250 Pa. 115, and other subsequent cases. It has frequently been held that legislation of the character of that in the Public Service Law is enacted in the exercise of the police power, with respect to which section 3; article XVI, of the Constitution of the State provides that "the exercise of the police power of the State shall never be abridged or so construed as to permit corporations to conduct their business in such manner as to infringe the equal rights of individuals or the general well being of the State." This clearly recognizes a paramount authority in the Commonwealth to prevent discrimination or conduct inimical to the general welfare by corporations. The regulation of the rates charged for service by a water company is within this power as has been shown by many cases—federal and State. Under this legislation the public service company may fix rates, subject however to the judgment of the Public Service Commission and the review of the courts, as to their reasonableness. Unless, therefore, the State disabled itself by fixing the maximum limit in the charter of the water company, the Public Service Law

superseded the enactment relating to the particular rate in the Borough of White Haven, and brought the company doing business there under the general system of supervision established by the Public Service Act. The same authority which authorized the rate in the charter of this water company has by subsequent legislation established a general method for determining the reasonable rates which such corporation might collect. If then the proviso in the charter of the water company was regulatory, it was an exercise of authority by the legislature which has since been transferred to the Public Service Commission, and is not different in its nature and effect from an order of the commission fixing a rate. It follows that the enactment of the Public Service Company Law repeals such regulatory legislation because it is inconsistent with the whole scheme and process of the public service legislation. The same authority which could enact the regulatory law could amend or repeal it, from which it follows that all legislation which is incompatible with the system put in operation under the Act of July 26, 1913, P. L. 1374, was repealed by that statute. The franchise of a public service company is subject to the reserved power of the State to regulate its exercise. This rule grows out of the fact that the public good is the paramount interest and is always held of the first consideration in the administration of the affairs of these public corporations. It is not within the capacity of the legislature in the assertion of the police power to estop a succeeding legislature from the exercise of that power although such subsequent exercise may have the effect of qualifying or undoing that which may theretofore have been enacted.

Nor in the light of recent adjudications do we reach a different conclusion if the limitation of the water company's rates be considered contractual as between the water company and the borough. There was no implication of the charter which prevented the State from permitting the company to charge a higher rate than that

fixed in the proviso, and the State was not a party to the contract between the water company and the borough. But the contract made, dealt with a subject in which the public was concerned. The safety and welfare of the community was involved in the construction and operation of the water plant. The company was a public corporation within one of the classes regulated by the Public Service Law, and contracts of this character are presumed to have been entered into with a knowledge on the part of all the parties concerned that it involved the rights of the public. It could not therefore be withdrawn from the operation of the police power. The foreclosure of this right would be in direct contradiction to the constitutional declaration that it could not be abridged.

Reliance is placed by the appellant on the decision in White Haven Borough v. The Water Co., 209 Pa. 166, in which it was held that the company, incorporated before the adoption of the present Constitution and the Corporation Act of 1874, could not by accepting the provisions of the Constitution and of that legislation avoid the obligation of its charter with respect to the maximum rate for service. The real question was whether by coming under the new law, the old liability was avoided? It will be observed that no new policy was adopted by the then existing legislation which was inconsistent with the regulation of rates by the legislature. The interest of the State was not involved in the controversy. But if it have the effect attributed to it by the appellant we are nevertheless required to hold in accordance with the decisions in Leiper v. Baltimore & Philadelphia Railway Co. et al., 262 Pa. 328; Scranton v. Public Service Commission, 268 Pa. 192, and other cases, that a contract of such character must give way to the contradictory exercise of the police power by the State. There was always the reserved right of the latter to employ its police power over the subject when in its judgment the public welfare made it necessary. The cases cited involved contracts made with public service companies, but the dis-

cussion in the opinions covers a consideration of the principle involved and of the effect of the public service legislation which sustains the action of the Public Service Commission.

The order of the commission is therefore affirmed at the cost of the appellant.