LAND, X
 

 (dissenting). It is stated in the opinion handed down by the majority that—
 

 . “The right (if any) of a municipal corporation to fix the rates for public service rendered -to its inhabitants does not come from the inherent power to contract, but from the police power; such grant of police power may be express or may result from necessary implication; it is necessarily implied when the municipality has the power to grant directly or indirectly an exclusive franchise for such public service; and whether the rates fixed at the time of granting such franchise be or be not a contract, the right to fix by compulsion rates not fixed by franchise necessarily resides in the municipality and not with the grantee.”
 

 The opinion cites no authority to sustain the proposition of law which it announces. In the case of City of Shreveport v. Southwestern Gas
 
 &
 
 Electric Co., 151 La. 864, 92 So. 365, a clear distinction between the fight of a municipality to fix rates by contract and the right to impose rates by compulsion is made, and it is expressly held that a city fixing rates by contract acts subject.to the right of the Legislature to change the rates when the public interest requires, and while the contract is binding on the city, it is not binding upon the Legislature.
 

 It is also distinctly held in that case that the power to fix compulsory rates and charges must be delegated to a municipality in clear and unmistakable terms, and that any fair and reasonable doubt concerning the existence of the power is to be resolved against the corporation and the power denied.
 

 The reason for this holding is that the power compulsorily to fix rates is a high attribute of sovereignty, not particularly needed by municipalities for properly functioning, and not usually delegated to them, and therefore cannot result from implication. 28 Cyc. 265; 19 R. C. L. 768. The decision in the case of the City of Shreveport v. Southwestern Gas & Electric Co. is based upon City of Scranton v. Public Service Commission, 268 Pa. 192, 110 A. 775, and Woodburn v. Public Service Commission, 82 Or. 127, 161 P. 391, L. R. A. 1917C, 98, Ann. Cas. 1917E, 996, and the authorities therein cited.
 

 The Supreme Court of Oregon said in the Woodburn Case:
 

 “The right of the state
 
 to regulate rates by compulsion is a police power,
 
 and must not be confused with the right of a city
 
 to exercise its contractual power to agree with a pubUc service company upon the terms of a franchise.
 
 The exercise of a power
 
 to fix rates by agreement
 
 does not include or embrace
 
 any poi'tion of the power to fix rates by compulsion.
 
 When Woodburn granted the franchise to the telephone company, the city exercised
 
 its ‘municipal right to contract,
 
 and it may be assumed that .the franchise was valid and binding upon both parties
 
 until such time as the state chose to speak;
 
 but the city entered into the contract
 
 subject to the reserved right of the state to employ its police power and compel a change
 
 
 *349
 

 of rates, and when the state did speak, the municipal power gave way to the sovereign power of the state.”
 
 (Italics mine.)
 

 The decisions of the Supreme Court of the United States are to the same effect. City of Winchester v. Winchester Waterworks Co., 251 U. S. 192, 40 S. C. 123, 64 L. Ed. 227; Los Angeles Telephone Case, 211 U. S. 265, 29 S. C. 50, 53 L. Ed. 179.
 

 The only power conferred upon the town of Vidalia under its charter is
 
 “to
 
 license ferries and to regulate the same and the landing thereof within the corporate limits.” The power thus delegated goes no further than to authorize the making of contracts granting ferry franchises and to regulate by agreement the rates to be charged by the grantees. Not a word can be found in the authority thus conferred upon the town of Vidalia to justify the grant of any exclusive ferry franchise, or to fix any rate, compulsorily and independently of that consented to by the contracting parties.
 

 The decision of the majority in this case virtually destitutes the state of its sovereignty as to the right of compulsory rate making, a police power inherent in the state, by holding that such power can be surrendered to a municipality by mere implication.
 

 Under such a holding, every town, city, and parish in the state, by virtue of the provisions of section 7 of article 6 of the Constitution of 1921, is removed from the control of the' Public Service Commission, because of the powers of “regulation” by implication vested in them at the date of the adoption of the present Constitution. As rates fixed by a municipality in a contract granting a franchise are binding on a city, but not on the Legislature, the moment the power of control by the Legislature over such rates is removed, at that very moment the franchise contract becomes inviolable, as far as a city is concerned, both as to the franchise and as to the rates themselves. The inherent right of thé state as sovereign, to act under its paramount police power, and to change the rates fixed in franchise contracts, and, in lieu thereof, to impose reasonable and just rates by compulsion, cannot be surrendered irrevocably by implication or expressly.
 

 Under this decision, if rates for gas, light, water, street car service, etc., as established in franchises already existing, or hereafter granted, are unreasonable and unjust to the public, they must remain so, as the contract granting the franchise and fixing the rate becomes inviolable in all respects.
 

 On the other hand, if such rates are not reasonable and just to the public service corporation, it is at liberty to resort to the federal courts and obtain relief, on the ground that it is not receiving a fair return on its .investment.
 

 If contracts fixing franchise rates are inviolable, as to such rates, how can the obligation of such contracts be impaired by any municipality surrendering its “powers of supervision, regulation, and control,” to the Public Service Commission by the vote of a majority of the qualified electors cast at an election held for that purpose, under the provisions of section 7 of article 6 of the present Constitution?
 

 But such contracts are not inviolable. In the case of State v. City of New Orleans, 151 La. 30, 31, 91 So. 535, this court said:
 

 “The rate-making authority over public utilities is an attribute of sovereignty, inherent in the state, as an element of her police power. It has been decided, in those states where, as in Louisiana, the Constitution forbids an abridgment of the police power of the state, particularly in Missouri, South Dakota, California, Pennsylvania, Montana and Mississippi, that the Legislature cannot surrender irrevocably or bargain away the authority to fix or control rates for public utilities. State v. Public Service Commission, 275 Mo. 201, 204 S. W. 499; Chicago & Alton Railroad Co. v. Tranbarger, 238 U. S. 67, 35 S. Ct. 678, 59 L. Ed. 1204; Atlantic Coast Line v. Goldsboro, 232
 
 *351
 
 U. S. 548, 34 S. Ct. 364, 58 L. Ed. 721; Lake Shore & Michigan Southern Railway Co. v. Ohio, 173 U. S. 285, 19 S. Ct. 465, 43 L. Ed. 702; C. B. & Q. Railway Co. v. Illinois, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175; Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499; City of Lead v. Gas Co. (S. D.) 184 N. W. 244, overruling Watertown v. Watertown, etc., Co., 42 S. D. 220, 173 N. W. 739; City of San Antonio v. San Antonio Public Service Co., 255 U. S. 547, 41 S. Ct. 428, 65 L. Ed. 777; City of Scranton v. Public Service Commission, 268 Pa. 192, 110 A. 775; City of Woodburn v. Public Service Commission of Oregon et al., 82 Or. 114, 161 P. 391, L. R. A. 19170, 98, Ann. Cas. 1917E, 996; O’Keefe v. City of New Orleans (D. C.) 273 F. 560.”
 

 This court, in the case of the City of Shreveport v. S. W. (Jas & Electric co., 151 La. 864, 92 So. 365, held that authority delegated to a municipality to establish by an inviolable contract the rates to be charged by a public service corporation “was not possible in this state,” in view of the constitutional provision forbidding the abridgment of the police power. This decision affirmed and reiterated the doctrine previously announced to the same effect in State v. City of New Orleans.
 

 The only difficulty in arriving at a correct solution of this matter of rate making has arisen from the confusion occasioned by not invoking the plain distinction between the powers of a municipality to fix rates, as a matter of regulation, in franchise contracts, and the exercise of the police power to fix compulsory rates, which must be delegated by the state, in plain and unmistakable terms, to the municipality, which has no such inherent power. The framers of the present Constitution did not interpret the powers of “supervision, regulation, and control” as including the right to establish rates compulsorily, when clothing the Public Service Commission of this state with its authority, but, in addition to these powers, the Constitution has expressly added, “and to fix reasonable and just rates.”
 

 If a municipality enjoys, under its powers of “supervision, regulation, and control,” the right to fix compulsory rates, it would possess powers equal to those of the Commission itself, and there would be no good reason or real necessity for its surrendering its right of self local government and its powers to that body. Erom this viewpoint, section 7 of article 6 of the present Constitution would be a useless provision in our organic law.
 

 However, if a municipality was without the police power, plainly delegated, to fix rates by compulsion, its power of “regulation” being restricted to the mere making of rates by agreement in franchise contracts, there would be both good reason and real necessity for the surrender of its inadequate powers to the Commission, if such franchise rates were unreasonable and unjust to the public, in order that reasonable and just rates might be imposed by that body by compulsion.
 

 We are dealing here with contracts, not between individuals affecting private interest, but with contracts granting public franchises to public service corporations; contracts which necessarily affect the general welfare of each city and' town in the state. Such contracts necessarily fall within the domain of the police power of the state, in order that the sovereign may give adequate protection to its citizens in the making of just and reasonable rates for the service rendered by public utilities. Lawful contracts of individuals, as they affect private interests only, are not subject to modification by the state, in the exertion of its police power. The obligation of such contracts cannot be impaired by legislative action. But contracts , by municipalities, granting public franchises and fixing public service rates, while inviolable as to the franchise itself, are subject to change by the state as to such rates, for, by all contracts of üiis character, public interest is affected, and
 
 *353
 
 into each of such contracts the ratehnaking element of the police power of the state necessarily enters, and must control, in the'in-* terest of the public good.
 

 As contracts granting public franchises are made, subject to the reserved right of the state, under its inherent police power, to change such rates, there can be no impairment of the obligation of such contracts, when the rates are changed.
 

 The decisions of this court, herein cited, are sound in principle, based upon established precedents, and afford ample protection to the public against excessive charges for service rendered by local public utilities. These decisions, therefore, should stand as the settled jurisprudence of this state on the question of the rate-making power.
 

 I therefore respectfully dissent.