## South Pittsburgh Water Co. v. Pennsylvania Public Utility Commission

*Ernest R. Von Starck,* for plaintiff.
*Joseph I. Lewis,* for defendant.
*Leon Wald,* for intervening defendant.

590

592

## Opinion Sur Exceptions

NEELY, P. J., May 31, 1961.—In this equity proceeding, plaintiff has challenged the authority of the Public Utility Commission to take jurisdiction of a contract dispute between plaintiff and intervening defendant concerning plaintiff's costs of furnishing water consumption data to the said intervening defendant under the Act of April 14, 1949, P. L. 482, as amended, 53 PS §2261, et seq. The matter is here on 14 exceptions filed by plaintiff to the adjudication of the chancellor. Plaintiff contends that the statute does not confer upon the commission jurisdiction of disputes concerning such data.

The Act of April 14, 1949, as amended, authorizes water utilities[1] to collect for municipal authorities their customers' bills for sewage service and to shut off the water for the nonpayment of these bills. Section 3 of the Act of April 14, 1949, as amended, 53 PS §2263, provides that water utilities are authorized to act as billing and collecting agents for these municipal authorities. Section 4 of the act, as amended, 53 PS §2264, provides, inter alia, that "The authority imposing such sewer, sewerage, or sewage treatment rentals, rates, or charges shall pay to every such water utility the reasonable additional clerical and other expenses incurred by it in providing such billing and collecting services."

The chancellor found that further provisions of section 4 conferred upon the Public Utility Commission jurisdiction of the contract dispute in question con-

---

[1] Section 5 of the act, 53 PS §2265, provides as follows:

"As used in this act, the term 'water utility' or 'water utilities' shall be construed to include all cities, boroughs, townships, municipal authorities and public utility companies engaged in the supplying of water . . ."

cerning water consumption data in the following language:

". . . If a dispute shall arise between any such water utility and the authority, city, borough, or township regarding the cost of such services, or the amount of such revenues lost, or regarding the provisions of any agreement between them concerning payments for such services, such dispute shall be submitted by either party to the Pennsylvania Public Utility Commission, whose decision, unless reversed on appeal by the Superior Court, shall be final; . . ."

Section 2 of the Act of April 14, 1949, as amended, 53 PS §2262, requires water utilities to furnish municipal sewer authorities with water consumption data so as to enable these authorities to use that data ". . . in calculating or computing its rentals, rates, or charges for furnishing sewer, sewerage, or sewage treatment service to such water customers." Plaintiff contends that the term "such services" in the above quoted portion of section 4 refers only to services rendered by water utility companies acting as billing and collecting agents for authorities in connection with the authorization conferred in section 3 of the act.

Plaintiff's contention limits the meaning of the term "such services" to the provisions of sections 3 and 4 relating to billing and collecting. It is argued by plaintiff that the furnishing of water consumption data, in accordance with the provisions of section 2 of the act, is not a billing and collecting service and the Public Utility Commission is given no jurisdiction.

The Act of April 14, 1949, as amended, requires cities, boroughs, townships, municipal authorities and public utility companies engaged in the supplying of water to shut off the water supply for nonpayment of sewer, sewerage and sewage treatment rentals. It was passed as a health and welfare measure to insure a

supply of pure water which is dependent on adequate sewage facilities for the treatment and disposal of wastes. The title, inter alia, states that the act contains provisions ". . . requiring [these municipalities and water companies] to supply to such authorities lists of metered water readings and flat-rate water bills and other data; authorizing them to act as billing and collecting agents for such authorities; and conferring certain powers upon the Pennsylvania Public Utility Commission in connection therewith."

"Service" as used in the preamble and in sections 1 and 2 of the Act of April 14, 1949, means "service" rendered by authorities to their customers. However, the term "services" or "such services" used in sections 3 and 4 relates to services furnished as between the water utilities and the authorities. It is clear that the term "service" as used in these portions of the act has two different meanings.

We believe that the term "such services" in the sentence conferring jurisdiction upon the Public Utility Commission should be construed as a word of emphasis relating to all services being rendered between water utilities and authorities as distinguished from services rendered by authorities to their customers. Among other definitions of the word "such" in Webster's International Dictionary (2nd edition) is "of the sort or degree previously indicated or contextually implied." In our opinion, the furnishing of water consumption data is contextually implied in the sentence in section 4 conferring jurisdiction, because the act comprehends the furnishing of water consumption data as an essential part of the billing and collecting services.

The act shows a clear concern for the collection of bills, and without water consumption data these bills could not be rendered or collected. The statute was enacted pursuant to the power of the Commonwealth to regulate the public health, morals and welfare of the

community. The preamble of the statute shows that it is a police measure and provides in the first paragraph as follows: "Whereas, the proper treatment and disposal of sewage and wastes are vital to the health and well-being of the inhabitants of the Commonwealth of Pennsylvania and to the purity of its waters." And the final paragraph of the preamble shows the concern of the legislature for the prompt payment of bills by customers and is in the following language:

"Whereas, the prompt payment of rentals, rates, or charges for sewer, sewerage and sewage treatment service can be assured only by the right of water shutoff for nonpayment thereof;"

The water consumption data furnished to authorities by water utilities pursuant to section 2 is a mandatory service, indispensable to "billing and collecting" referred to in sections 3 and 4. We think the furnishing of such data is included within the term "such services" as used in section 4 in conferring jurisdiction in the Public Utility Commission with respect to disputes arising regarding costs of service.

Plaintiff complains that under the Act of April 14, 1949, private property is taken without just compensation, contrary to article I, sec. 10, of the Constitution of Pennsylvania, which provides that private property shall not "be taken or applied to public use, without authority of law and without just compensation being first made or secured." It is plaintiff's contention that under this constitutional provision its property can only be taken in an action in eminent domain, in which proceeding it would be entitled to a jury trial. Hence, it is argued that the act is unconstitutional and is in violation of due process of law, contrary to the fourteenth amendment of the Federal Constitution and article I, sec. 9, of the Constitution of Pennsylvania.

This argument fails to take into account the nature

of the Act of April 14, 1949, which is a police measure intended for the public health and welfare. Furthermore, the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1101, et seq., was enacted under the police power. "The creation of the [Public Utility] Commission was an exercise of the police power: Scranton v. P. S. C., 268 Pa. 192, . . . (1920), which held that the police power of the State includes the power to regulate charges for service rendered the public by public service corporations, . . .": Rogoff v. The Buncher Company, 395 Pa. 477, 483 (1959). See also P. L. Encyc. (Public Utility Commission) Vol. 30, sec. 1, page 182; 43 Am. Jur.—Public Utilities and Services—§83, page 624.

Plaintiff is protected against unreasonable or confiscatory action by virtue of the provisions of the Public Utility Law. Not only is its right of appeal written into this law, but provision is specially made for appeal by the Act of April 14, 1949, sec. 4, supra. The matters involved here and committed to the jurisdiction of the Public Utility Commission were nonexistent at the time of the adoption of our Constitution. Hence, there was no common law or constitutional right of trial by jury in matters pertaining to disputes over costs of service furnished in accordance with section 2 of the Act of April 14, 1949. See Dillner Transfer Co. v. Pennsylvania Public Utility Commission, 73 Dauph. 329, 331, 332 (1959). There is no violation of due process of law in referring the dispute in question to the Public Utility Commission on the same basis that that commission may consider and dispose of many questions affecting the public interest that come within the jurisdiction of the commission under the Public Utility Law and which must be tested by the standard of reasonableness.

The chancellor's view of plaintiff's rights under the Public Utility Law and his concept of plaintiff's argu-

ment concerning the constitutional aspect of this case is accepted by the court and reference should be had to the adjudication. The chancellor misconceived the provision of section 701 of the Public Utility Law, 66 PS §1271, which provides that, where there is a service contract between affiliated interests, the commission shall have jurisdiction and shall determine the reasonableness of the service contract. While there is affiliation between municipal sewer authorities and water utilities in the dictionary sense, the chancellor did not reckon with the statutory definition of "affiliated interest".[2]

The rationale of the chancellor's adjudication that the commission shall have jurisdiction of this service contract and shall determine the rights of the parties on the basis of the reasonableness of the contract is correct. The commission's authority to act in this respect and to apply this standard of reasonableness to the rights of the parties is found within the folds of the Public Utility Law, section 920 being particularly applicable: 66 PS §1360.

Other than the chancellor's inadvertent reference to section 701 of the Public Utility Law, we accept and approve the decree of the chancellor and the language in his adjudication. What we have said herein disposes of the substance of all plaintiff's exceptions. Accordingly, these exceptions must be overruled and we therefore enter the following

## Order

And now, May 31, 1961, the exceptions of plaintiff to the chancellor's adjudication are herewith overruled.

---

[2] Section 2 of the Public Utility Law of May 28, 1937, as amended, 66 PS §1102, refers to "affiliated interest" as meaning a stock ownership by any person or corporation in the capital stock of a public utility.