## Reading Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued December 17, 1959. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Allen Lesley*, with him *H. Merle Mulloy*, for appellant.

*Louis J. Carter,* Assistant Counsel, with him *Joseph F. McCloskey,* Assistant Counsel, and *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*Elizabeth Ehrlich,* for intervenors, under Rule 46.

OPINION BY ERVIN, J., March 24, 1960:

The matter involved in this appeal is the application of Reading Company for approval of a change in the status of its Wernersville Station in the Borough of Wernersville, Berks County, from that of an agency passenger and freight station to that of a nonagency passenger and freight station. A previous similar application was denied by the Commission on March 14, 1955. In the present proceedings, protests were filed by the Order of Railroad Telegraphers and Gloray Knitting Mills, who were represented by counsel at the hearing. No direct testimony was offered by protestants. The Commission denied the application and the company appealed.

The factors to be considered in eliminating a passenger agency have been so thoroughly and recently considered by this Court that we deem it unnecessary to repeat them in this opinion. See *Rydal-Meadowbrook Assn. v. Pa. P. U. C.,* 173 Pa. Superior Ct. 380, 98 A. 2d 481; *Pa. Railroad Co. v. Pa. P. U. C.,* 184 Pa. Superior Ct. 228, 132 A. 2d 887.

What was so well said by the Court in *Atlantic Coast Line R. Co. v. Public Service Commission,* 77 F. Supp. 675, 685, 686, is applicable to the present application: "The court cannot close its eyes to conditions as they exist and which are well known to every one. As was pointed out by the South Carolina Supreme Court in Blease v. Charleston & W. C. Ry., 146 S.C. 496, 144 S.E. 233, a railroad company has but limited powers of management. It has no power to fix rates

and thus has little control over its revenue. Its control over expenses, particularly wages, is also strictly limited as the spiral of recent wage increases abundantly indicates. It is restricted in its managerial functions by rules arising from contracts with well-integrated and nation-wide labor organizations. It is in competition with bus and truck lines as well as private automobiles which travel over highways built, not by private capital, as is the case with rail carriers, but by public expenditures. It is in competition with government subsidized waterways, and, in recent years, with the expanding activities of the air lines. Recent rate increases, which in the final analysis have to come from the public pocket, are in recognition of the impact of these forces. In such circumstances it is the duty of a carrier to seek, and of regulatory agencies to permit, the elimination of those services and facilities that are no longer needed nor used by the public to any substantial extent."

Wernersville station is an agency passenger and freight station located on applicant's Lebanon Valley Branch, Reading Division, in the Borough of Wernersville, Berks County. The nearest agency stations on the Lebanon Valley Branch are at Sinking Spring, 2.9 miles by rail and about 3.2 miles by improved highway to the east, and Womelsdorf, 5.8 miles by rail and about 6.2 miles by improved highway to the west. The agent at the Wernersville station is on duty daily, except Saturday, Sunday and holidays, from 8:30 a.m. to 10:00 a.m. and from 3:00 p.m. to 5:30 p.m., or a total of four hours per day. The Wernersville agency station is "dualized" with the Womelsdorf agency station where the agent spends the rest of his eight-hour tour of duty. Also, the Wernersville station has jurisdiction over and performs the accounting and billing for carload freight handled at the South Mountain station, a nonagency freight station for carload freight on pri-

vate siding only, and which services the Wernersville State Hospital. The company proposes to close the passenger station but the freight house will be left open. The Sinking Spring agency will have jurisdiction over and would perform all the accounting and billing for freight handled at the Wernersville and the South Mountain stations.

The Commission found the following facts, all of which were favorable to the application: "A review of the evidence presented shows that there has been a decline in carload freight handlings at Wernersville of about 18 per cent, comparing the year 1955 with 1958. Less-than-carload freight shipments during the same period show a decrease of about 48 per cent, with about 70 per cent of these shipments in 1958 coming to or from the Gloray Knitting Mills. There was only one outbound carload freight shipment in the four-year period—a car of scrap copper shipped in December 1958.

"As to passenger ticket sales, the record shows that in 1958, the agent sold a total of 51 tickets, or about one every five working days. Since 1955, passenger ticket sales decreased from 375 in 1955 to 51 in 1958. . . .

"Applicant's Exhibit 16 shows that the ratio of station expenses to revenue has increased from 132.47 per cent in 1955 to 148.94 per cent in 1958. Deficits resulting from operation of the station amounted to $4,305.50 in 1955; $4,564.64 for 1956; $4,999.62 for 1957; and $4,366.81 in 1958." The Commission really made no findings of fact contra the company. As to the decline in the sale of passenger tickets, it said: "Protestants account for this by pointing to the substantial reduction in train service to and from Wernersville during this period." The fact remains, however, that the number of passengers using the service

declined to such an extent that in 1958 the agent sold but about one ticket in every five working days.

As to the mounting deficits resulting from the operation of the station, the Commission said: "However, the record discloses that, although the agent at Wernersville performs certain work and uses agency facilities at Wernersville in connection with substantial carload shipments made to the State Hospital at South Mountain, the entire expense of maintaining the Wernersville station was included in compiling these expenses with no compensating credit for the revenue produced from the South Mountain carload shipments."

The Commission made no attempt to find the results if the revenue from South Mountain were added to the revenue at Wernersville. Counsel for the Railroad in its brief points out, however, that "the inclusion of the South Mountain station revenues with the Wernersville station revenues for the year 1958 would serve to reduce the station ratio from 148.94 per cent to about 70.0 per cent, but we must not overlook the fact that it costs something to transport the freight to and from the South Mountain station, and when we do that we find that the application of the cost of transportation which amounted to 75.89 per cent of revenue for 1958, total transportation and station costs amount to $1.45 per dollar of station revenue, hence a deficit. In other words, by such inclusion the deficit for Wernersville station for 1958 would be reduced from $4,-366.81 to $3,403.18."

The Commission did not find but could have found from the evidence that the gross station revenue at the Wernersville station declined from $8,491.00 in 1952 to $3,498.00 in 1958. The station ratio of expenses to revenue increased from 75 per cent in 1952 to 149 per cent in 1958. It must be remembered that the passenger trains (there being only one each way each day) will continue to stop at Wernersville station.

Tickets may be purchased on the train without penalty. The only real inconvenience which the few passengers who use the service would suffer is that the station would not be open. This is but a slight inconvenience in comparison to the financial loss suffered by the company. As to freight, the sidings and freight house will remain just as they are except that there will be no agent present. It must be remembered that the agent is present only four hours a day, Monday to Friday inclusive, and is not present at all on Saturday and Sunday. Carload and less-than-carload lots of freight will continue to be loaded and unloaded at the Wernersville station. Carload freight would be placed on public team track or private siding by the train crew just as at present. Less-than-carload freight shipments would be placed in the freight warehouse by the truck driver just as at present. Patrons would have no freight charges to pay, as all shipments, carload and less-than-carload, for Wernersville would have to be shipped with freight charges prepaid, unless the consignee is a credit patron, in which event shipments could be forwarded to such patron with the freight charges prepaid or collect.

Placement of the car upon public or private track and the less-than-carload freight shipment in the warehouse constitutes delivery and it would not be necessary for the patron to first go to Sinking Spring station to sign for the shipment.

Notice of arrival of freight would be given by telephone or mail just as at present, except it would be from Sinking Spring instead of from Wernersville.

On outbound carload freight, of which there was only one such shipment in more than four years, it would be handled in the same manner, except that the shipper will have to order the car through the agent at Sinking Spring and shipping papers furnished the agent at Sinking Spring.

Outbound less-than-carload freight would be placed in the open warehouse at Wernersville, and the shipping papers furnished the agent at Sinking Spring, or the shipping papers could be left with the shipment for delivery by the truck driver to the agent at Sinking Spring for billing purposes.

All transactions relative to the paper work for an outbound shipment could be handled by telephone and mail.

Anyone now using the Wernersville station for less-than-carload freight of necessity must transport it to or from the station. Today it is only a matter of minutes by car or truck between Wernersville and Sinking Spring in the event the patron does not want to use the Wernersville station.

Moreover, the patrons at Wernersville, 13 of whom testified in opposition to the granting of the application in the prior case, are all familiar with the distinction between an agency and nonagency station, and not one of them testified in opposition to the granting of the instant application.

After reviewing the record in this case we conclude that the order of the Commission is not consistent with its findings of fact. We also conclude that substantial and competent evidence, presented by the carrier, justified an order in its behalf and that the Commission committed error of law in not making such order.

The order of the Commission is reversed.