# Reading Company, Appellant, *v.* Pennsylvania Public Utility Commission.

578

Argued March 24, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Allen Lesley,* with him *H. Merle Mulloy,* for appellant.

*Anthony L. Marino,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

OPINION BY ERVIN, J., April 13, 1961:

This is an appeal from an order of the commission dated October 10, 1960, denying appellant's application to remove the agent at the Penllyn station, which is an agency passenger and freight station. The Penllyn station is adjacent to Blue Bell Pike in Lower Gwynedd Township, Montgomery County, on appellant's Bethlehem Branch, Philadelphia Division, between Ambler to the east, or toward Reading Terminal, and North Wales to the west.

The application was filed in accordance with §202 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, 66 PS §1122, which provides as follows: "Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful: . . . (d) For any public utility to dissolve, or to abandon or surrender, in whole or in part, any service, right, power, franchise, or privilege: . . ."

Relative to the function of this Court on appeal, §1107 of the Public Utility Law, as amended, 66 PS §1437, provides: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional right."

The factors to be considered and the law applicable to cases of this nature have been fully and recently stated by this Court and will not be repeated here: *Rydal-Meadowbrook Assn. v. Pa. P. U. C.,* 173 Pa. Superior Ct. 380, 98 A. 2d 481; *Pa. R. R. Co. v. Pa. P. U. C.,* 184 Pa. Superior Ct. 228, 132 A. 2d 887; *Reading Co. v. Pa. P. U. C.,* 191 Pa. Superior Ct. 635, 159 A. 2d 61.

The business transacted at the Penllyn station is slight. No Railway Express Agency shipments and

no Western Union telegrams are handled at Penllyn station. While U. S. Mail is handled at Penllyn station, the agent has nothing to do with it. Only one piece of baggage was forwarded from Penllyn station in a period of two years and ten months. The Penllyn station is the accounting agency for carload freight handled at the Gwynedd Valley non-agency passenger and carload only freight station. The Gwynedd Valley station is 1.2 miles by rail, the next station to the west.

The following statement shows the number of carload and less than carload freight shipments handled at the Penllyn station during a period of two years and ten months:

FREIGHT SHIPMENTS

|  | Carload | | | Less-Than-Carload | | |
|---|---|---|---|---|---|---|
|  | In | Out | Total | In | Out | Total |
| 1957 | 1 | 0 | 1 | 47 | 1 | 48 |
| 1958 | 2 | 0 | 2 | 24 | 1 | 25 |
| 1959 (10 Mos.) | 0 | 0 | 0 | 18 | 0 | 18 |

The one inbound carload freight shipment in 1957 was a car of fertilizer, and the two inbound cars in 1958 were cars of cement.

The following tabulation shows the total ticket sales at Penllyn during the two year and ten month study of the business transacted at the station:

TOTAL TICKET SALE BY TYPES

|  | Local | Interline | Commutation | Total |
|---|---|---|---|---|
| 1957 | 12,717 | 56 | 1829 | 14,602 |
| 1958 | 9,968 | 27 | 1318 | 11,313 |
| 1959 (10 Mos.) | 6,911 | — | 662 | 7,573 |

Under the heading "Local" are the one-way and the shoppers' tickets, and under the heading "Commutation" are all of the multiple ride and commutation forms of tickets. The "Interline" ticket sales are for

transportation partially on appellant's lines and partially on the lines of another railroad.

All fares for the "Local" one-way and shoppers' tickets may be paid on trains without penalty or additional charge, as is now done during periods when the agent is not on duty. Commutation and multiple ride tickets would have to be purchased at any agency station which patrons may use or is convenient to them, such as Ambler, Jenkintown, Wayne Junction or Reading Terminal. In addition, appellant has instituted a "Purchase-by-Mail-Plan" which provides a convenient means by which patrons can purchase all forms of commutation and multiple ride tickets by mail, with postage paid by appellant.

The situation when appellant filed its application in September 1959 to make Penllyn a non-agency station was as follows: net income had dropped from $10,297,607 in 1957, to $3,277,321 for 1958. For the first ten months of 1959 it was down to $1,346,357. The passenger service deficit amounted to $9,047,051 in 1957, $7,229,685 in 1958 and for the first eight months of 1959 it was estimated at $4,165,392.

The only business transacted at the Penllyn station for which an agent was required during 1957 and the first six months of 1958 was for the sale of an average of about 7 multiple ride and commutation tickets per day. Only about one of the aforesaid seven tickets was a commutation ticket. Foreign or interline tickets averaged about one per week. During this period the local one-way and shoppers' tickets averaged about 49 per day and constituted about 86 per cent of all ticket sales. The one-way and shoppers' tickets are the ones for which the fare can be paid on trains without additional charge or penalty as at present when an agent is not on duty. Freight shipments in 1957 amounted to 1 carload for the year, and an average of about 4 l.c.l. shipments per month.

Despite the fact that the agent was on duty during the morning hours when passenger traffic is heaviest inbound, or toward Philadelphia, the multiple ride and commutation ticket sales dropped from a daily average of about 7 in 1957 to 3 in the first seven months of 1959, only one of which was a commutation form of ticket. Total ticket sales during this period dropped from an average of about 57 per day in 1957 to 34 in the seven months of 1959. Even with the economy effected by dualization Penllyn station was operated at deficits amounting to $12,261.58 in 1958 and $6,287.91 during the first seven months of 1959.

Virtually all of the revenues of the Penllyn station are derived from the sale of passenger tickets, as shown by the following tabulation:

STATION REVENUES

|  | 1957 | 1958 | 1959 (7 Mos.) |
|---|---|---|---|
| Passenger | $26,179.84 | $20,788.34 | $8,332.72 |
| Freight | 192.34 | 223.01 | 45.30 |
| Miscellaneous | 5.59 | 2.92 | 1.44 |
| Total | $26,377.77 | $21,014.27 | $8,379.46 |

The expense of operating the station and the resulting station ratios, cost of transportation and resulting balance of revenue, are shown in the following tabulation:

|  | 1957 | 1958 | 1959 (7 Mos.) |
|---|---|---|---|
| Station Revenues | $26,378. | $21,014. | $8,379. |
| Station Expenses | 5,510. | 4,339. | 2,794. |
| Station Ratio | 20.89% | 20.65% | 33.34% |
| Cost of Transportation | 38,734. | 28,937. | 11,874. |
| Balance of Revenue | $17,866.* | $12,262.* | $ 6,288.* |

* Deficit

The saving to be effected in this proceeding amounts to $6,000.00, which is based on the agent's present hourly rate of pay. This saving will be effected by dualizing or triolizing some other station, which will result in the saving of the wages of one full-time man.

No one testified in opposition to the granting of this application from a freight standpoint.

Only one witness testified in opposition to the granting of this application from a passenger standpoint, a regular commuter, Mr. John N. Mears. Mr. Mears' testimony is confined to his observations as to the number of cars parking at the station and the number of people using the station. However, not once does Mr. Mears complain about having to buy his ticket at Reading Terminal. In fact, a fair reading of Mr. Mears' testimony would indicate that while it is descriptive, certainly none of it would justify the commission in concluding that Mr. Mears or anyone else would be inconvenienced by the closing of the Penllyn station.

In the absence of a station agent at the Penllyn station, all of the station facilities are to remain. The waiting room in the passenger station building on the inbound side or the side for trains to Reading Terminal, will be kept open as at present and will be heated during the winter season. The waiting room on the outbound side will be kept open as at present. The stairways and platforms which are now automatically lighted as required during evening and night hours by means of electric time clock will be retained. The passenger trains will continue to serve the station as the application does not even contemplate any discontinuance of passenger train service to and from the station. Although passengers could no longer buy tickets at Penllyn if the ticket office is closed by reason of the removal of the agent, patrons may pay

fares for local and shoppers' tickets on trains without additional charge or penalty, just as they do now when the agent is not on duty. Multiple ride and commutation forms of tickets would have to be purchased at other nearby agency stations, such as Ambler, 2 miles by highway to the east, as well as at Jenkintown, Wayne Junction or Reading Terminal, or at any other agency station convenient to or used by the patron. Carload and l.c.l. freight will continue to be handled.

In the absence of substantial evidence of a need for the continuance of a particular agency station, the financial position of the appellant is important. The following tabulation compares freight and passenger operating revenues, operating ratio and net income for 1958 with 1956 and the rate of decline expressed in per cents:

| | 1956 | 1958 | Per cent of Decline |
|---|---|---|---|
| Operating Revenues Freight | $122, | $ 92, | 25% |
| Operating Revenues Passenger | 7, | 6, | 15% |
| Operating Revenues Total | 138, | 106, | 26% |
| Ratio Op. Expenses to Op. Revenues | 76.48% | 83.94% | 9.7%* |
| Net Income | 12, | 3, | 75% |

(000,000 omitted)
* Increase

The commission completely ignored the fact that the passenger train service is operated at substantial annual deficits, amounting to $9,047,051 for 1957, $7,229,685 for 1958, and to the end of August, 1959, it was estimated at $4,165,392.

The commission completely ignored the overall financial condition of the company as reflected in its

net income which dropped from $12,112,831 in 1956 to $1,346,357 for the first ten months of 1959.

From a freight standpoint, it completely ignored the existence of some 22 motor freight carriers certificated to serve Penllyn, and who by their tariffs hold themselves out to serve the area.

It completely ignored the fact that the Ambler passenger station is open for the sale of passenger tickets from 6:10 a.m. to 10:10 p.m., Mondays to Fridays, except holidays, from 5:50 a.m. to 1:50 p.m. on Saturdays, and on Sundays from 6:45 a.m. to 2:45 p.m.

The commission ignored the fact that the present passenger train service to and from Penllyn, Mondays to Fridays, is substantially the same comparing the present total of 58 trains with the 62 in 1957.

The commission ignored the fact that there had been no substantial decline in the use of the weekday passenger train service at Penllyn comparing 1959 with 1957 although total ticket sales decreased from a daily average of about 57 in 1957 to 34 in 1959.

The order here involved is clearly without support in the evidence and is so arbitrary, capricious and unreasonable as to amount to error of law and should be reversed.

Order reversed.