Reading Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued March 24, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Allen Lesley,* with him *H. Merle Mulloy,* for appellant.

*Thomas C. Zerbe, Jr.,* Assistant Counsel, with him *Louis J. Carter,* Assistant Counsel, and *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

OPINION BY ERVIN, J., April 13, 1961:

This is an appeal from an order of the commission dated September 6, 1960 denying appellant's application to remove the agent at the Fern Rock station, which is an agency passenger and freight station for carload freight only. The Fern Rock station is located on the south side of Godfrey Avenue, east of 10th Street, in the 49th Ward of the City of Philadelphia, on appellant's Bethlehem Branch, Philadelphia Division.

The application was filed in accordance with §202 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, 66 PS §1122, which provides as follows: "Upon approval of the commission, evidenced by its certificate of public convenience first had and obtained, and upon compliance with existing laws, and not otherwise, it shall be lawful: . . . (d) For any public utility to dissolve, or to abandon or surrender, in whole or in part, any service, right, power, franchise, or privilege: . . ."

Relative to the function of this Court on appeal, §1107 of the Public Utility Law, as amended, 66 PS §1437, provides: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights."

The factors to be considered and the law applicable to cases of this nature have been fully and recently stated by this Court and will not be repeated here: *Rydal-Meadowbrook Assn. v. Pa. P. U. C.,* 173 Pa. Superior Ct. 380, 98 A. 2d 481; *Pa. R. R. Co. v. Pa.*

*P. U. C.*, 184 Pa. Superior Ct. 228, 132 A. 2d 887;
*Reading Co. v. Pa. P. U. C.*, 191 Pa. Superior Ct. 635,
159 A. 2d 61.

Although the protestants were represented by
counsel, no witnesses appeared in opposition to the
granting of the application. The facts, therefore,
come solely from the evidence presented by the com-
pany.

The business transacted at the Fern Rock station
is slight. No railway express shipments, U. S. Mail,
Western Union telegrams or less-than-carload freight
shipments are handled at Fern Rock station. No bag-
gage has been checked to or from Fern Rock station
for a period of two years and ten months.

The carload freight business of the station, the
only freight service provided, consisted of two inbound
carload freight shipments of face brick in 1957 and
two inbound carload freight shipments of hollow tile
and one of switchboard parts, for a total of three, in
1958, with none handled during the first ten months
of 1959. The last carload freight shipment was re-
ceived at Fern Rock station in November 1958, ap-
proximately a year prior to November 24, 1959, the
date of the hearing. There were no outbound carload
freight shipments during 1957, 1958 and the first ten
months of 1959, the period of study covered by the
operating department witness.

The following tabulation shows the total ticket
sales at Fern Rock, covered by the two year and ten
month study of the business transacted at the station:

TOTAL TICKET SALES BY TYPES

|  | *Local* | *Interline* | *Commutation* | *Total* |
|---|---|---|---|---|
| 1957 | 22,033 | 86 | 2,935 | 25,054 |
| 1958 | 18,551 | 44 | 2,327 | 20,922 |
| 1959 (10 mos.) | 8,848 | 15 | 1,378 | 10,241 |

Under the heading "Local" are the one-way and the shoppers' tickets, and under the heading "Commutation" are all of the multiple ride and commutation forms of tickets. All fares for the "Local" one-way and shoppers' tickets may be paid on trains without penalty or additional charge, as is now done at Fern Rock station during periods when the agent is not on duty.

Multiple ride and commutation forms of tickets would have to be purchased at other nearby agency stations, such as Oak Lane, 1.2 miles by highway to the east, and Tabor, 1.0 mile by highway to the west, as well as at Jenkintown, Wayne Junction or Reading Terminal, or at any other agency station convenient to or used by the patron.

Appellant has also instituted a service known as the commutation ticket "Purchase-by-Mail-Plan" by means of which patrons may purchase their commutation and multiple ride tickets by U. S. Mail, postage paid.

When the application was filed in September 1959 the following picture was presented: the only business transacted for which an agent is required was the sale of an average of about six, actually 6.4, commutation or multiple tickets per day and about one interline ticket every three weeks. The local one-way and shoppers' tickets constitute 86 to 87 per cent of all ticket sales. These are the ones for which the fares can be paid on trains without additional charge or penalty as at present when the agent is not on duty. He had handled no freight since the one car in November 1958.

The following tabulation shows the number of tickets by types and the per cent of decline for the first seven months in each of the years 1957, 1958 and 1959:

### TICKET SALES AND PER CENT OF DECLINE

| 1st. 7 Mos. | Local | % | Commutation | % | Total | % |
|---|---|---|---|---|---|---|
| 1957 | 12,563 | | 1767 | | 14,330 | |
| 1958 | 12,529 | 0% | 1482 | 17% | 14,011 | 3% |
| 1959 | 6,815 | 46% | 1110 | 37% | 7,925 | 45% |

During the first seven months of 1957 and of 1958 the agent was on duty for eight hours at Fern Rock station, and thus it will be noted that already a 17 per cent decline had occurred in commutation ticket sales prior to dualization. In the first seven months of 1957 and 1958 the station was open for the transaction of business a total of 126 days, for 1959 it was 127. Thus, while local ticket sales remained about the same during the first seven months of 1957 and 1958, with the agent on duty 8 hours per day, commutation ticket sales dropped from a daily average of 14 in 1957 to 11 in 1958, and for 1959, with the agent on duty 3.5 hours per day, they dropped to about 9 per day. The decline subsequent to dualization in commutation ticket sales is not as great as it was prior thereto, except for the sale in the local tickets, the fares for which can be paid on the train without additional charge or penalty. On the same basis, local ticket sales decreased from a daily average of about 100 in 1957 to 54 for the first six months of 1959. For the first ten months of 1959 the local sales dropped to about 35 and the commutation ticket sales to about 6 per day.

Virtually all of the revenues of the Fern Rock station are derived from the sale of passenger tickets, shown by the following tabulation:

STATION REVENUES

|  | 1957 | 1958 | 1959 (7 Mos.) |
|---|---|---|---|
| Passenger | $27,601.91 | $23,771.67 | $11,257.90 |
| Freight | 217.65 | 299.61 | None |
| Miscellaneous | 16.70 | 23.64 | 69.40 |
| Total | $27,836.26 | $24,094.92 | $11,327.30 |

The expenses of operating the station and the resulting station ratios, cost of transportation and resulting balance of revenue, are shown in the following tabulation:

|  | 1957 | 1958 | 1959 (7 Mos.) |
|---|---|---|---|
| Station Revenues | $27,836. | $24,095. | $11,327. |
| Station Expenses | 5,519. | 5,205. | 3,164. |
| Station Ratio | 19.83% | 21.60% | 27.94% |
| Cost of Transportation | 20,248. | 18,286. | 8,580. |
| Balance of Revenue | $ 2,069. | $ 605. | $ 418.* |

*Deficit

Future freight patrons may continue to receive or ship carload freight shipments from Fern Rock station. The only transaction involved on such shipments would be the sending of an arrival notice from the Oak Lane agency, which will have jurisdiction over any freight that may be handled at Fern Rock station, or a freight bill in the case of credit patrons.

In the absence of a station agent at the Fern Rock station, all of the station facilities are to remain. The waiting room in the passenger station building on the inbound side or the side for trains to Reading Terminal, will be kept open as at present and will be heated during the winter season. The waiting room on the outbound side will be kept open as at present.

The stairways and platforms which are now automatically lighted as required during evening and night hours by means of electric time clock, will be continued. The passenger trains will continue to serve the station as the application does not even contemplate any discontinuance of passenger train service to and from the station. Although passengers could no longer buy tickets at Fern Rock if the ticket office is closed by reason of the removal of the agent, patrons may pay fares for local and shoppers' tickets on trains without additional charge or penalty, just as they do now when the agent is not on duty.

In the absence of substantial evidence of a need for the continuance of a particular agency station, the financial position of the appellant is important. The following tabulation compares freight and passenger operating revenues, operating ratio and net income for 1958 with 1956 and the rate of decline expressed in per cents:

|  | 1956 | 1958 | Per cent of Decline |
|---|---|---|---|
| Operating Revenues Freight | $122, | $ 92, | 25% |
| Operating Revenues Passenger | 7, | 6, | 15% |
| Operating Revenues Total | 138, | 106, | 26% |
| Ratio Op. Expenses to Op. Revenues | 76.48% | 83.94% | 9.7%* |
| Net Income | 12, | 3, | 75% |

(000,000 omitted)

\* Increase

Confronted with the decline in business which began in 1957 and the deficits from passenger operations, which amounted to $9,047,051 in 1957, appellant was

compelled to take such steps as were open to it under the Public Utility Law to reduce expenses.

Appellant was also confronted with the fact that in spite of freight rate and passenger fare increases, expenses of operation outran revenues by some 37.93 per cent, comparing 1958 with 1939.

The commission completely ignored the fact that the passenger train service is operated at substantial annual deficits, amounting to $9,047,051 for 1957, $7,229,685 for 1958, and to the end of August 1959 it was estimated at $4,165,392. It ignored the competitive service of the Philadelphia Transportation Company, which opened a new Fern Rock Subway station at 9th and Nedro Avenue, three streets south of the station, and the existence of other bus and trolley service in the vicinity of the station. It ignored the fact that there was no substantial reduction in the number of trains serving Fern Rock station, Mondays to Fridays. In 1957 there were 33 outbound trains stopping at Fern Rock, the same as at the time of hearing, but the inbound trains had been reduced from 36 in 1957 to 34 at the time of hearing. It ignored the finding that there had been a substantial decrease in the use of the passenger train service comparing 1959 with 1957, amounting to 24 per cent.

The commission ignored the fact that there was a 17 per cent decline in commutation ticket sales at the Fern Rock station prior to dualization on July 28, 1958, comparing the results of the first seven months of 1958 with the same period of 1957.

The order here involved is clearly without support in the evidence and is so arbitrary, capricious and unreasonable as to amount to error of law and should be reversed.

Order reversed.