197 Pa. Superior Ct. 382 (1962)
Pennsylvania Railroad Company, Appellant,
v.
Pennsylvania Public Utility Commission.
Superior Court of Pennsylvania.
Argued November 14, 1961.
March 21, 1962.
*383 Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P.J., absent).
Raymond F. Scannell, for appellant.
S. Maxwell Flitter, Assistant Counsel, with him Joseph I. Lewis, Chief Counsel, for Pennsylvania Public Utility Commission, appellee.
OPINION BY WATKINS, J., March 21, 1962:
This is an appeal from the order of the Pennsylvania Public Utility Commission denying the application of the appellant, The Pennsylvania Railroad Company, to discontinue certain agency service at the railroad company's Coalport freight station located in the Borough of Coalport, Clearfield County, Pennsylvania.
The Pennsylvania Railroad Company filed its original application on July 17, 1959, to discontinue agency service at its freight station at Coalport, placing it under *384 the jurisdiction of its Patton station agency, and also to restrict the handling of less-than-carload freight at said station to such less-than-carload freight as could be handled in pick-up and delivery service. A hearing was held and one protestant appeared at the hearing. On April 4, 1960, the application was denied.
A petition for rehearing and reconsideration was filed on April 21, 1960, and at a further hearing, the record of the prior hearing was incorporated in the record and it was shown that the protest of J.H. Homer Lumber Company, a protestant at the first hearing, was withdrawn. The only protestant appearing at this hearing was a representative of the Coalport Chamber of Commerce. On July 10, 1961, the application was denied and this appeal followed.
The function of this Court on appeal, the factors to be considered and the law applicable to cases of this nature have been fully and recently stated by this Court and will not be repeated here. Section 202 of the Public Utility Law, Act of May 28, 1937, P.L. 1053, 66 PS § 1122; Section 1107 of the Public Utility Law, 66 PS § 1437; Rydal-Meadowbrook Assn. v. Pa. P.U.C., 173 Pa. Superior Ct. 380, 98 A. 2d 481 (1953); Pa. Railroad Co. v. Pa. P.U.C., 184 Pa. Superior Ct. 228, 132 A. 2d 887 (1957); Reading Co. v. Pa. P.U.C., 191 Pa. Superior Ct. 635, 159 A. 2d 61 (1960); N.Y. Central R.R. Co. v. Pa. P.U.C., 193 Pa. Superior Ct. 636, 166 A. 2d 55 (1960); Reading Co. v. Pa. P.U.C., 194 Pa. Superior Ct. 577, 169 A. 2d 590 (1961); Reading Co. v. Pa. P.U.C., 194 Pa. Superior Ct. 636, 169 A. 2d 587 (1961).
No patron appeared to protest the application except a representative of the Chamber of Commerce of Coalport. There was no testimony that would indicate any inconvenience which would result to its members. The protest was largely based on local pride and hope that the effort being made by the Chamber might in *385 the future improve the economic life of the area. We believe too much weight was placed by the commission on optimistic hope of future business. See: N.Y. Central R.R. Co. v. Pa. P.U.C., supra.
The prayer of the petitioner was to change the status of the station at Coalport from that of an agency freight station to that of a nonagency carload only freight station. The Coalport freight agency station is located on the Irvona Branch of the Pittsburgh District in Clearfield County, 29.2 miles north of the agency at Cresson, Pa., and 16 miles west by highway of the agency station at Houtzdale and 15 miles east by highway of the agency station at Patton, Pa.
Coalport is a borough, which with the surrounding area, has a population of approximately 2500 people. The present facilities available at the Coalport station are as follows: Carload shipments are handled direct from the station at Cresson; LCL is handled by contract truck through the station at Patton; and also billing, notices and telephone services for Coalport, Blandburg, Irvona and Glasgow.
The change contemplated by the petition would handle the business in the following manner. Coalport and Irvona, Blandburg and Glasgow will be placed under the jurisdiction of petitioner's agency at Patton. No change will be made in present carload service. Inbound and outbound less than carload service will continue to move as at present except that shipments outside applicable pick-up and delivery limits at Coalport will be tendered at Patton or Houtzdale as patrons may elect. It should be noted that no LCL patron made any protest to the suggested change in service.
The factors to be considered in eliminating an agency are accessibility to other stations; the ratio of cost of maintaining the station to revenue received and the necessity for and inconvenience to the public as a whole. N.Y. Central R.R. Co. v. Pa. P.U.C., supra. *386 See also: Pa. Railroad Co. v. Pa. P.U.C., supra; Reading Co. v. Pa. P.U.C., supra. As to the revenue produced by the Coalport station, in 1959 there was a total revenue realized for the shipment of freight of $4707. However, when credit is taken for the payment to other railroads for interline shipments the net would be $3843, while the cost of operating the station for the same period of time with an agent in attendance was $5765.54. If we add to the revenue for the Coalport station itself the revenue realized from the Blandburg, Irvona and Glasgow, which are nonagency stations, we would have a total revenue, after granting an allowance for interline stations, of $160,959.50. In the first five months of 1960 there was a net revenue realized for the Coalport station itself of $1101 to which could be added the net revenue received from the three nonagency stations as noted above, of $38,933.50, which would increase the total credited to the Coalport station of $40,034.50. This income to the railroad station would be unchanged if the prayer of the petitioner is granted and the Coalport station changed from an agency station to a nonagency station. It should be noted that the figure, which we are discussing, although net, after credit is taken for payment to other railroads for interline shipments, is actually gross because no consideration has been given to the cost of bringing the freight to the point in question.
It is apparent that the Coalport station itself does not return sufficient income to warrant the retention of an agent at the station and even though it would seem that the total revenue credited to the Coalport station would be sufficient to carry the burden of the agency, the railroad company should be permitted the economy of saving the expense of this agency station where, as indicated above, there are other readily available agency stations, and where the change from an agency station to a nonagency station will cause no *387 inconvenience to the shippers using the facility, nor to the public in general.
We must consider the plight of modern railroads which is so well set forth in Reading Co. v. Pa. P.U.C., supra, at page 636, and even if the income received would justify the salary of the agent, if the expenditure is out of proportion to the benefit and the convenience of the public as a whole and its elimination can be accomplished without substantial inconvenience, as the record indicates, the railroad should be encouraged to abolish the agency and make the saving.
The order herein involved is so arbitrary, capricious and unreasonable as to amount to error of law and should be reversed.
Order reversed.