### Allegheny County et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued March 12, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Maurice Louik,* County Solicitor, with him *Thomas M. Rutter, Jr.,* and *Harold Gondelman,* Assistant County Solicitors, for County of Allegheny, appellant.

*Marion K. Finkelhor,* Second Assistant City Solicitor, with him *David W. Craig,* City Solicitor, for City of Pittsburgh, appellant.

*Harry A. Estep,* appellant, in propria persona.

*Daniel F. Joella,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*James H. Booser,* with him *Harry H. Frank,* and *McNees, Wallace & Nurick,* for railways company, intervening appellee.

OPINION BY MONTGOMERY, J., July 9, 1963:

This is an appeal from an order of the Pennsylvania Public Utility Commission permitting the Pittsburgh Railways Company to temporarily discontinue the operation of the Castle Shannon Incline Plane between Bailey Avenue and East Carson Street in Pittsburgh, a distance of approximately 1,350 feet.

The Railways Company filed a petition on April 19, 1962, to abandon service on the incline plane. The County of Allegheny, the City of Pittsburgh and Harry A. Estep, Esq., a lawyer and a user of the incline plane, filed objections. This petition and thirty-two other petitions of the Pittsburgh Railways Company to abandon and modify transportation routes were consolidated for hearings. Testimony on these issues was taken June 26 and 27, July 30, October 16, 17, 18 and 19, and December 4, 5, 6 and 7, 1962, and other hearings were to follow. On December 8, 1962, the Pittsburgh Railways Company petitioned the Pennsylvania Public Utility Commission for an immediate temporary certificate to abandon service on the incline plane and by order dated December 17, 1962, and filed January 3, 1963, the commission approved "the temporary discontinuance of service on the Castle Shannon Incline Plane in the City of Pittsburgh . . .".

An appeal was taken from this order to the Superior Court by the County, the City, and Mr. Estep who, we think, were proper party appellants. They asked this Court for a supersedeas, which was granted. The commission and Pittsburgh Railways Company, as intervening appellee, moved to quash the appeal on the ground that the order was interlocutory and not appealable, and that the appellants had no standing to appeal.

The appellants contend that the commission had no authority to make a temporary order; that the order which it did make is a final abandonment order, and therefore appealable; and that the order was issued without due process and is therefore unconstitutional and of no legal effect.

The mere fact that the order is temporary in nature does not mean that there may be no judicial review of it. In a sense, nearly all orders of the commission relating to rates and services are temporary in that they are subject to change. The majority of this Court are of the opinion that this order accomplishes the complete termination of service except for the dismantling of the incline plane, subject, of course, to a subsequent order reinstating service before that occurrence, and is therefore appealable; and that the motion to quash should be dismissed.

The remaining question is: Did the commission have authority to issue an order before completion of the hearings on the issue?

The commission's authority must arise either from the express words of the statute or by strong and necessary implication therefrom. *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 393 Pa. 639, 145 A. 2d 172.

The Public Utility Law of May 28, 1937, P.L. 1053, §901, 66 P.S. 1341, gives the commission "general administrative power and authority to supervise and

regulate all public utilities doing business within this Commonwealth." Furthermore, the same section gives the commission power to "make such regulations, not inconsistent with the law, as may be necessary or proper in the exercise of its powers or for the performance of its duties . . .".

The commission's general powers are further set forth in section 902, 66 P.S. 1342: "In addition to any powers hereinbefore expressly enumerated in this act, the commission shall have full power and authority, and it shall be its duty, to enforce, execute, and carry out, by its regulations, orders, or otherwise, all and singular the provisions of this act, and the full intent thereof; and shall have the power to rescind or modify any such regulations or orders. The express enumeration of the powers of the commission in this act shall not exclude any power which the commission would otherwise have under any of the provisions of this act."

The commission and the intervening appellee refer to these general powers as authority for this order.

Temporary orders in establishing fares and rates have been issued by the commission under its general powers, and its authority to issue them has been recognized by the courts. *City of Scranton v. The Public Service Commission (No. 1)*, 73 Pa. Superior Ct. 192, affirmed in 268 Pa. 192, 110 A. 775. However, specific statutory authority to fix temporary rates is now contained in section 310, 66 P.S. 1150. This section was added to the Public Utility Law subsequent to the City of Scranton decision.

In connection with that amendment this Court in *Pittsburgh v. Pennsylvania Public Utility Commission*, 171 Pa. Superior Ct. 391, 394, 90 A. 2d 850, 851, in a per curiam opinion frowned on the exercise of such power except in strict conformance with section 310: "We are of the opinion that, pending the disposition of the undetermined rate proceeding, no increase in rates

is permissible except as may be provided by section 310 of the Public Utility Law of May 28, 1937, P. L. 1053, 66 PS §1150; and that the action of the Commission by a majority vote in allowing new tariffs to become effective and the protested tariffs to be canceled was arbitrary, unreasonable, and contrary to law." Also see *Philadelphia v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 96, 63 A. 2d 391.

Insofar as service is concerned, we find no specific provision in the code for the grant of certificates of public convenience for temporary service or temporary abandonment of existing service. On the contrary, section 203, 66 P.S. 1123 provides for the grant of certificates only after public hearings; and in section 1008, 66 P.S. 1398, relating to investigations by the commission, we find another limitation on its powers, viz., ". . . but it shall make no order without affording the parties affected thereby a hearing." In *W. J. Dillner Transfer Company v. Pennsylvania Public Utility Commission,* 186 Pa. Superior Ct. 526, 142 A. 2d 419, we held that the requirement of notice and hearing under section 1007, 66 P.S. 1397, was not restricted to the rescission or amendment of orders in cases of complaints but that it applied to all other proceedings as well. Also see *Paradise v. Pennsylvania Public Utility Commission,* 184 Pa. Superior Ct. 8, 132 A. 2d 754, which holds that the commission is bound by the due process provisions of constitutional law which require notice and an opportunity to be heard.

No case has been directed to our attention which supports the contention of the present appellees that the commission may order the abandonment of service prior to the conclusion of a public hearing at which the propriety of such action is to be determined. *Womelsdorf Consolidated Water Co. v. Pennsylvania Public Utility Commission,* 160 Pa. Superior Ct. 298, 50 A. 2d 548, cited by the commission, is not support-

ing. It holds merely that a preliminary order directing the Utility to permit access to its books, a procedural matter incident to the proceeding, was proper. It held further that the requisite hearing must be held before the final order becomes effective. *Sayre Land Company v. Pennsylvania Public Utility Commission,* 167 Pa. Superior Ct. 1, 74 A. 2d 713, involved a similar preliminary effort to gain access to books and records; *Sherwood v. Pennsylvania Public Utility Commission,* 177 Pa. Superior Ct. 6, 109 A. 2d 220, a case of abandonment of service, was decided after full hearing. No preliminary order was entered, only a final one. The same is true in *Borough of Carlisle v. Public Service Commission,* 81 Pa. Superior Ct. 475.

The Railways relies further on sections 202 and 203, 66 P.S. 1122 and 1123 in support of its contention. Section 202 requires similar approval of the commission evidenced by its certificate of public convenience before a public utility may abandon service or surrender it in whole or in part. Section 1123, previously referred to, provides that such certificate shall be granted only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience or safety of the public, and then only after public hearings. It is implied in the brief of intervening appellee (Railways) that the extent of such hearings is within the discretion of the commission and therefore the constitutional requirements of due process were satisfied and the present order proper. The appellee assumes by this argument that the commission was satisfied with the evidence it had taken up to the time of the order. However, it is not necessary to rule on this point since the order of the commission states specifically that further hearings were to be held.[1]

---

[1] The matters have not been concluded and further hearings had been scheduled for January 15, 16, 17 and 18, 1963.

We must conclude that the commission, in preliminarily ordering the cessation of service before completion of the hearing on the subject, was acting arbitrarily and beyond its general or specific powers in the present case.

We can conceive that there may be emergency situations arise when the commission may be privileged to act quickly, but the present case is not one of them. We see no emergency or even particular urgency in the present situation. The principal reason for the petition to abandon this service is the economic loss which the petitioner alleges it is suffering. However, that alleged loss has been sustained in varying amounts for many years past, according to the petition. In fact it was less in 1962 than in some of the preceding years. We have recognized economic loss as a factor in determining whether service and facilities should be abandoned, *Reading Company v. Pennsylvania Public Utility Commission,* 194 Pa. Superior Ct. 577, 169 A. 2d 590, and 194 Pa. Superior Ct. 636, 169 A. 2d 587, but the needs of the public are a more important factor, *West Penn Railways Company v. Pennsylvania Public Utility Commission,* 142 Pa. Superior Ct. 140, 15 A. 2d 539.

The Railways' alleged loss in this case is in dispute, and some public need for the service still remains. Since the testimony is not concluded, those issues cannot be fully determined at this time. Therefore, it is necessary that we remand this matter to the commission for the completion of its hearings and for further consideration. The disposition of this particular phase of the consolidated proceeding need not be delayed. If urgency requires, this petition may be severed from the consolidated proceeding and disposed of separately. We are not passing on the merits of this case at this time.

Appeal sustained and case remanded to the Public Utility Commission for further proceedings consistent with this opinion.

Motion to quash refused.

———

DISSENTING OPINION BY WOODSIDE, J.:

I cannot agree with the majority in this case. The appeal was from a temporary order, meant to remain effective only until a permanent order is made on the petition to abandon the incline.

The basic question to be decided is whether the commission has authority to issue an order approving a temporary discontinuance of service of a public carrier. I think it does.

The commission's authority must *either* arise from the express words of the statute *or* by strong and necessary implication therefrom. *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 393 Pa. 639, 643, 145 A. 2d 172 (1958). The Public Utility Law of May 28, 1937, P. L. 1053, §901, 66 P.S. §1341, gives the commission "general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth." Furthermore, the same section of the Law gives the commission power to "make such regulations, not inconsistent with the law, as may be necessary or proper in the exercise of its powers or for the performance of its duties . . ."

This is a fast moving world. Transportation has passed from the horse and buggy to the jet. Business decisions must be made rapidly and carried out expeditiously. Public needs can change overnight. Business enterprises may be prosperous one month and in financial difficulty the next. When government seeks to regulate a large and important segment of business

in this busy age, it must find ways to meet the needs as they arise and not months or years later. It is detrimental to the public interest for government to continue horse and buggy practices. The commission must have authority to act expeditiously, and the legislature intended that it should.

Let us imagine a few extreme, but not unusual, instances where the need for a temporary order for the abandonment of service is evident. Suppose a bus company is furnishing transportation service to a large manufacturing plant which suddenly closes its operation resulting in thousands of employes no longer needing the bus service to the plant. Would the commission be without authority to permit the temporary abandonment of the bus lines to the plant because a few watchmen at the closed plant filed objections and insisted upon a full hearing? Or suppose a trolley bridge used in a poorly patronized run became unsafe, or the machinery on the incline here involved were to fail necessitating great expense for repairs, is the commission powerless to authorize a temporary abandonment?

Temporary orders of various kinds have been issued by the commission under its general powers, and its authority to issue them has been recognized by the courts. See *Scranton v. Public Service Commission (No. 1),* 73 Pa. Superior Ct. 192, 195, 196 (1919), affirmed in 268 Pa. 192, 110 A. 775 (1920). (Specific statutory authority to fix temporary rates now contained in §310 of the Public Utility Law, 66 P.S. §1150, was added to the Law subsequent to this decision.) *Andrews v. Public Service Commission,* 88 Pa. Superior Ct. 306, 312, 313 (1926). There are many instances where the commission has granted temporary authority for the extension of service.

The majority suggests that the commission's order has the effect of a final order of abandonment, and that

no such order may be made until all the hearings on the petition have been held. This order does not permit "a permanent abandonment of service." The equipment necessary to operate the incline may not be removed by the company, and the company must be prepared to resume service should the final order so provide.

This case is now in its second year, and still in the process of determination by the commission. The first company witness appeared in June of 1962, and was cross-examined for four days. The appellants stated at argument before our Court that they had further extensive cross-examination, reaching into such questions as the advisability of the investments the company had made of some of its cash funds. The company witness being ill, his further cross-examination was postponed, and the users of the incline railroad testified. By this time, the petition to abandon the incline plane had been pending approximately seven months, the company had presented the commission with evidence of the loss suffered by the operation of the incline plane and the routes which the company is seeking permission to abandon, the appellants cross-examined the company's witness for four days, and the users of the incline plane were heard by the commission. Furthermore, the commission was generally familiar with the circumstances surrounding the operation of the incline plane from two prior cases recently before it. The commission's temporary order was thus not based upon mere administrative whim, but upon a background of evidence and knowledge. It is true that the appellants insisted upon additional hearings, and we assume that they were fully within their rights in insisting upon these hearings prior to final order. The fact that a final order must await the completion of these extended hearings does not require the completion of these hearings before a temporary order may be entered. See

*Sayre Land Company v. Pa. Public Utility Commission*, 167 Pa. Superior Ct. 1, 9, 74 A. 2d 713 (1950); *Inland Empire Dist. Council v. Millis*, 325 U.S. 697, 710, 65 S. Ct. 1316, 1323 (1945).

There is a presumption that in issuing the temporary order, the commission has not acted arbitrarily, but upon proper ground. The cost of operation of the incline appears to be far in excess of the income. Assuming that the commission had the authority to enter a temporary order pending the entry of a final order, there is nothing in the record before us to indicate that the commission's temporary order was improper.

I would allow the commission to permit the temporary discontinuance of the incline plane pending final disposition of the petition to abandon.

RHODES, P. J., and ERVIN, J., join in this dissent.