Opinion by
Watkins, J.,
This is an appeal from an order of the Pennsylvania Public Utility Commission denying the application of the Pennsylvania Railroad Company, the appellant, to change the status of its station at Reynoldsville, Jefferson County, from an agency freight station to that of a nonagency, carload only, freight station.
This Court has already decided a number of these cases in which the change was permitted and has held that the factors to be considered in the discontinuance of service at an agency freight station are (1) accessibility to other stations; (2) the ratio of cost of maintaining the station to revenue received; and (3) the necessity for and inconvenience to the public as a whole. N. Y. Central RR. Co. v. Pa. P.U.C., 193 Pa. Superior Ct. 636, 166 A. 2d 55 (1960). Additional factors that have entered into the decisions are: (1) the condition of the industry as it bears upon the reasonableness of the expenditures in relation to the benefit and convenience of the public; and (2) whether a saving can be effected without inconvenience to the *404 public. Pa. Railroad Co. v. Pa. P.U.C., 197 Pa. Superior Ct. 382, 178 A. 2d 856 (1962).
There is no need of detailed discussion in this case with the exception of the cost-revenue ratio. See the full discussion in Pa. Railroad Co. v. Pa. P.U.C., supra. See also: N. Y. Central RR. v. Pa. P.U.C., 198 Pa. Superior Ct. 458, 182 A. 2d 251 (1962). This case is indistinguishable as to the other factors from the Coal-port case and the Loch Haven case cited above.
Reynoldsville station is in the Borough of Reynoldsville, a residential and mining community of 3160 population. It is about fifteen miles east of the agency at Brookville and about seven miles west of the agency at Falls Creek. The application proposed to discontinue agency and intrastate less-than-carload service (L.C.L.) and to place the Reynoldsville station under the jurisdiction of the agency at Falls Creek, seven miles away. Future business would be transacted through the Falls Creek agency with the company absorbing telephone calls occasioned by this mode of doing business. The service would remain the same, except there would be no L.C.L. service at Reynoldsville and the agent would be located at Falls Creek.
As we said in Pa. Railroad Co. v. Pa. P.U.C., supra, at page 384: “The function of this Court on appeal, the factors to be considered and the law applicable to cases of this nature have been fully and recently stated by this Court and will not be repeated here.”
The costs directly connected with the maintenance of the agency service at Reynoldsville amounted to $8027 in 1961. This was at-station costs. No administrative costs were included. The gross revenue at the station was $38,196, only $18,094 was local to the company. The amount credited to Reynoldsville was $13,570 for all business, so that the minimum costs of the Reynoldsville station are taking 60% of the revenue derived from the operation. The company *405 contends that even though this leaves sufficient to pay the agent, the public should not be required to pay this disproportionate cost.
What we said in the Pa. Railroad Co. v. Pa. P.Ü.C., supra, at page 386, in regard to the Coalport agency and reiterated in the N. Y. Central RR. v. Pa. P.U.C., case supra, at page 463, in the Lock Haven agency, is equally applicable to this case. “It is apparent that the Coalport station itself does not return sufficient income to warrant the retention of an agent at the station and even though it would seem that the total revenue credited to the Coalport station would be sufficient to carry the burden of the agency, the railroad company should be permitted the economy of saving the expense of this agency station where, as indicated above, there are other readily available agency stations, and where the change from an agency station to a nonagency station will cause no inconvenience to the shippers using the facility, nor to the public in general.”
A word concerning the protestants in this case. There are only three. The only shipper protestant was in the business of shipping pulpwood by carload lots. The record indicates that his principal complaint was that the removal of the agent to Falls Creek would deprive him of the convenience of the location of an agent within one thousand feet of his place of business. He could, by walking from his place of business to the station, order the ears he needed, and in the event a defective car was sent, he could make a complaint direct to the agent. A person is not entitled to a personalized service. So far as this record discloses he could secure exactly the same service from Falls Creek by the installation of a telephone. As to the appearance of two witnesses on behalf of the community, it is a well known fact that local pride compels the effort to keep the agency in the community but, although *406 deserving sympathetic consideration, in the overall picture, it cannot be one of the factors considered in the public control of rates and services. Denton Brothers v. Atchison, T. & S. F. Ry. Co., 34 N.M. 53, 57, 277 P. 34, 36 (1929).
•' The order denying the application for a change of agency status is so arbitrary, capricious and unreasonable as to amount to error of law.
Order reversed.
Rhodes, P. J., dissents.