Opinion by
Wright, J.,
On January 16, 1963, the Erie-Lackawanna Railroad Company applied to the Pennsylvania Public Utility Commission for approval of a change in the status of its station in the Borough of Plymouth, Luzerne County, Pennsylvania, from that of an agency freight station to that of a non-agency carload only freight station. The sole protest filed was by the Order of Railroad Telegraphers. Testimony was taken at a hearing on March 26, 1963. By its order dated September 3, 1963, the Commission denied the application. This appeal by the Company followed.
The record discloses that the station in question is located in Plymouth Borough on the Company’s Scranton division four miles by highway southwest of its agency station at Kingston. Plymouth Borough has a population of approximately 10,500. The facilities of the Company at Plymouth consist of a freight station building and a team track. The local agent is on duty from 7:00 A.M. to 11:00 A.M. and from 12:00 noon to 4:00 P.M., Monday through Friday, except holidays. He does not handle mail, telegrams, or express. Non-agency stations of the Company at West Nanticoke, Auehincloss and Avondale are also under the jurisdiction of the agent at Plymouth.
Carload freight at Plymouth is presently handled by local way-freight train operating from Kingston on Monday through Friday. Less than carload shipments are handled in pick-up and delivery service by truck operating from the Kingston agency. If the instant application is approved, the Company proposes that *514 its Kingston agency would have jurisdiction of the then non-agency station at Plymouth, as well as the non-agency stations at West Nanticoke, Auehincloss and Avondale. Carload freight and less than carload shipments would continue to be handled as at present. Notifications and business transactions would be made either by mail, telephone, or by direct contact at Kingston. There would be no telephone toll charge to Kingston. The agent at Kingston would travel to Plymouth whenever necessary.
The only testimony offered at the hearing before the Commission’s examiner was that of Clyde R. Detrick, the Company’s supervisor of stations and car service. The Company also placed in evidence two lengthy and detailed exhibits containing a recapitulation of revenue, a statement of cars received and forwarded, a statement of less than car-load shipments received and forwarded, and a statement of annual operating costs. The Order of Railroad Telegraphers was represented by counsel, who cross-examined Mr. Detrick and offered in evidence four photographs of the Plymouth station. There was no protest or appearance either by patrons of the Company or by members of the general public.
The factors to be considered in applications of this nature were set forth by President Judge Rhodes in the leading case of Rydal-Meadowbrook Association v. Pa. P.U.C., 173 Pa. Superior Ct. 380, 98 A. 2d 481, as follows: “Where the carrier seeks to remove the agent from a station and reduce it to a non-agency status, the following factors should receive consideration: (1) The volume and the nature of the business transacted at the station; (2) proximity and accessibility of other stations; (3) the ratio of cost of maintaining the station agency (including both out of pocket and overall expense) to revenues received from the station; (4) the inconvenience to the public resulting from removal Of *515 the agent; and (5) the nature of the service remaining or to he substituted”. An important test is whether the cost of maintaining the agency is out of proportion to the benefit received by, and the convenience of, the public as a whole: Pennsylvania Railroad Company v. Pa. P.U.C., 184 Pa. Superior Ct. 228, 132 A. 2d 887. Even if the income received would justify an agent’s salary, if the expenditure is out of proportion and its elimination can be. accomplished without substantial inconvenience, the railroad should be encouraged to abolish the agency and make the saving: Pennsylvania Railroad Company v. Pa. P.U.C., 197 Pa. Superior Ct. 382, 178 A. 2d 856. See also Reading Company v. Pa. P.U.C., 191 Pa. Superior Ct. 635, 159 A. 2d 61.
It is our view that, in the instant case, the Commission did not give proper consideration to the controlling factors. It failed to attach significance to the fact that the agency station at Kingston was only four miles distant, which renders it readily accessible by improved highway. As to the ratio of cost of maintenance to revenues received, the Commission accorded only cursory treatment to the financial picture portrayed by appellant’s exhibits, stating merely that “the proposed saving appears trivial when compared to the substantial overall operating revenues”. The net revenue for 1962, after allowance for interline shipments but without consideration of the cost of bringing the freight to the stations in question, was $92,197.00. Of this amount, only $18,788.85 was attributable directly to the Plymouth station, the balance being derived from the three non-agency stations at West Nanticoke, Auchincloss and Avondale.. In terms of volume of business for the year 1962, the total number of carloads received at and forwarded from those three non-agency stations was 1329, whereas the corresponding total for Plymouth station alone was only 112. The cost of maintaining the Plymouth' station with an agent in *516 attendance was $7,934.22 for the year 1962. While this amount is admittedly less than the revenue directly attributable, that fact does not preclude approval of the application. The important factor is whether a saving can be effected without inconvenience to the public: New York Central Railroad v. Pa. P.U.C., 198 Pa. Superior Ct. 458, 182 A. 2d 251.
So far as the factor of inconvenience is concerned, the record does not support the statement by the Commission that the Company’s proposal “would appear to create an inconvenience to the respective local shippers”. As already indicated, no local shippers protested or appeared. Their business is largely transacted by telephone. Most of them are already familiar with the procedure at a non-agency station and are satisfied with it. No substantial change will be made in the manner in which freight shipments are presently handled.
The problem presented by this appeal has become acute due to the expansion of vehicular transportation, and the resulting plight of modern railroads. The instant factual situation is more favorable to the Company’s position than that in our most recent decision on the subject, Pennsylvania Railroad Company v. Pa. P.U.C., 202 Pa. Superior Ct. 402, 195 A. 2d 830, wherein we reversed the Commission’s order denying an application of the Pennsylvania Railroad Company to change the status of its station at Reynoldsville. Our cases stand firmly for the proposition that it is the duty of railroads to seek, and of the Commission to grant, the elimination of services and facilities which are no longer needed or used to any substantial extent, and which can be discontinued without material inconvenience to the public. It is of course true, as argued by the Commission, that this court does not sit as a super-administrative body, and we are not to exercise our independent judgment on the record. How *517 ever, the present order of the Commission is so arbitrary, capricious and unreasonable as to amount to error of law. It therefore becomes our duty under the Public Utility Law to set it aside. Act of May 28, 1937, P. L. 1053, Section 1107, 66 P.S. 1437. .
Order reversed.
Rhodes, P. J., dissents.